**UNITED STATES of America, Appellee,**

v.

**John MILLER, Jr., Appellant.**

**No. 72–2312.**

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1973.

Decided May 16, 1973.

---

Andrew S. Fine and Morris H. Fine, Norfolk, Va. (R. Wayne Nunnally and Fine, Fine, Legum & Fine, Norfolk, Va., on brief), for appellant.

Frank D. Allen, Atty., U. S. Dept. of Justice (David L. Norman, Asst. Atty. Gen., Brian P. Gettings, U. S. Atty., and Mary Planty, Atty., U. S. Dept. of Justice, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and WINTER, Circuit Judges.

PER CURIAM:

John Miller, Jr., a migrant farm labor contractor, was convicted of holding certain persons to involuntary servitude by preventing them from leaving his employ and control [1] and of twice failing to furnish them with statements of earnings and deductions.[2] Several grounds for reversal are advanced, but we find merit only in the contention that the district court was too restrictive in limiting the cross-examination of a government witness on his record of prior convictions. We reverse and award a new trial.

At trial, the government's chief witness was John Gordon Moore. He testified that he was tricked into coming to defendant's labor camp and once there he was beaten by defendant and forced to work against his will. He testified also that he was given no written statement of his earnings or of the money withheld from his earnings.

Although Moore's testimony was corroborated in large part by a number of other witnesses, defendant testified in his own behalf and directly controverted Moore. Defendant also offered extensive testimony to show that his camp was not fenced, that there were no guards, that there were no locks, and that farm laborers, including Moore, were free to come and go without restraint. Although there was clearly sufficient evidence from which a jury might conclude that defendant was guilty, the evidence was sharply conflicting and much of the weight of the government's evidence depended upon the credibility of Moore.

When Moore was cross-examined, defendant's counsel sought to interrogate him about convictions of crimes involving moral turpitude. In fact, Moore had been convicted of six felonies over the years 1943 to 1960.[3] Five were prior to 1954. The record neither reflects their nature nor the punishment imposed. The district court ruled, in response to an inquiry by counsel, that counsel could not inquire about more than one conviction and could not inquire into the nature of even that one. In accordance with the ruling, counsel asked Moore, "Have you been convicted of a crime involving moral turpitude?" and Moore responded, "Yes." A motion for a new trial, based in part on undue limitation on the opportunity to impeach Moore, was denied.

"Prior criminal convictions for felonies or misdemeanors involving moral turpitude ordinarily constitute material impeaching evidence," was our statement in United States v. Hildreth, 387 F.2d 328, 329 (4 Cir. 1967). Of course, in that case, we also said that the trial court has discretion to limit such impeachment, especially of a defendant, when there is reason to apprehend that "the prejudicial effect of the earlier convictions . . . will outweigh their possible probative force in impeaching credibility." *Id.* 329.

In no sense to depart from this holding, we think that the district court exceeded its discretion in the instant case.

---

1. 18 U.S.C.A. § 1584.

2. 7 U.S.C.A. § 2045(e).

3. By contrast, defendant had no prior convictions.

Moore was not a defendant. His credibility was a major issue in the case. The district court may properly have refused to permit interrogation about convictions remote in time, depending upon their nature and the extent to which they involved dishonesty or false statements. This is a matter we cannot decide on this record. But we do not think that, having exercised his discretion to permit impeachment on the most recent conviction, the district court should have refused to permit interrogation about the time and place of conviction, the nature of the offense, and the punishment imposed.[4]

Reversed; new trial awarded.

4. "How far may the cross-examiner go in his inquiries about convictions? He may ask about the nature of the crime committed, i. e., murder or embezzlement, and the punishment awarded . . . the more reasonable practice . . . is [to permit inquiry into] . . . the name of the crime, the time and place of conviction, and the punishment . . . ." (footnotes omitted). McCormick on Evidence (1972 Ed.) § 43, p. 88. See Beaudine v. United States, 368 F.2d 417, 421-422 (5 Cir. 1966).