**UNITED STATES of America,
Appellee,**

v.

**Edgar CARTER, Appellant.**

**No. 75–1273.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1975.

Decided Dec. 10, 1975.

Rehearing and Rehearing En Banc
Denied Jan. 23, 1976.

Certiorari Denied May 3, 1976.
See 96 S.Ct. 1745.

Thomas M. Bradshaw, Asst. Federal Public Defender, Kansas City, Mo., for appellant.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

VOGEL, Senior Circuit Judge.

This is a direct appeal by Edgar Carter from a judgment of conviction on two counts charging distribution of heroin, a narcotic controlled substance. The judgment is based upon a jury verdict in the United States District Court for the Western District of Missouri returned December 10, 1975. Appellant's first trial, which was held on May 7, 1974, ended in a jury disagreement.

In his appeal, Carter contends (1) that the district court erred in denying his motion to suppress impeachment evidence of the number and nature of his prior felony convictions; (2) that the government improperly exercised its peremptory challenges in this and other cases so as to exclude persons of the Negro race from the trial jury; (3) that the trial court improperly questioned a defense witness in the presence of the jury; (4) that the court denied appellant a fair trial by its comments to the jury on the evidence at the close of the case. We find none of the issues raised by the appellant merits reversal and accordingly, the conviction is in all things affirmed.

We consider the alleged errors in the order in which they are presented in the appellant's brief.

## I.

Appellant alleges error in denying his motion to suppress evidence of the number and nature of his prior convictions introduced for impeachment purposes. Prior to his being indicted in the instant case, the appellant had been convicted of second-degree murder in 1968, first-degree robbery in 1963, and false check charges in 1958. At the trial, the court excluded the 1958 conviction as being too remote in time, but denied appellant's motion to exclude evidence regarding the nature and number of the appellant's other two felony convictions. It is appellant's contention that the admission of any evidence regarding either the number of prior felony convictions or the specific nature of those crimes was an abuse of the trial court's discretion and reversible error. We disagree.

It is true that the admissibility of "other crimes" evidence is initially a matter within the sound discretion of the trial court. *United States v. Calvert*, 523 F.2d 895 (8th Cir. 1975); *Cunha v. Brewer*, 511 F.2d 894, 900 (8th Cir. 1975). Thus, the admissibility of "other crimes" evidence should not be a "mechanical" process. *United States v. Calvert, supra.* See, also, concurring opinion of Judge

Bright in *United States v. Brown*, 453 F.2d 101, 110 (8th Cir. 1971), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972), and in *United States v. Scarpellino*, 431 F.2d 475, 479 (8th Cir. 1970). It is also the long-standing rule in this circuit that a defendant who offers himself as a witness may be cross-examined with respect to prior felony convictions. *See United States v. Pugh*, 509 F.2d 766, 768 (8th Cir. 1975); *United States v. Rucker*, 496 F.2d 1241, 1243 (8th Cir.), *cert. denied*, 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 181 (1974); *United States v. Poitra*, 486 F.2d 46, 47 (8th Cir. 1973); *United States v. Merrill*, 484 F.2d 168, 171 (8th Cir.), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 594, 38 L.Ed.2d 484 (1973); *United States v. Scarpellino, supra*; *Montgomery v. United States*, 403 F.2d 608 (8th Cir. 1968), *cert. denied*, 396 U.S. 859, 90 S.Ct. 126, 24 L.Ed.2d 110 (1969).

 Appellant presses the claim, however, that while the trial jury had a right to be apprised of the fact that Carter had "a prior felony conviction", the trial court abused its discretion in allowing the jury to know the exact nature and number of those convictions. This contention is without merit. We held in *United States v. Leach*, 429 F.2d 956, 961 (8th Cir. 1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971), that there was no error in permitting the government to inquire into the number of defendant's previous felony convictions, and we decline to adopt a wooden rule which would preclude as a matter of

law the trial judge from permitting evidence of specific prior felonies where it is felt the probative value outweighs the prejudicial impact in the jury's evaluation of the defendant's credibility as a witness.[1] *Accord, United States v. Miller*, 478 F.2d 762 (4th Cir. 1973); *United States v. Dow*, 457 F.2d 246 (7th Cir. 1972); *Whalen v. United States*, 367 F.2d 468 (5th Cir. 1966). We agree with the government that the trial court in fact carefully examined appellant's motion to limit admissibility of prior convictions. The court did sustain a portion of the motion and refused to allow the government to utilize the oldest conviction for impeachment purposes.[2]

## II.

As his second claimed error, appellant asserts that improper exercise of the peremptory challenge by the United States Attorney's office in this and other cases in the Western District of Missouri has denied him a fair trial. Appellant obtained below a court order to allow examination of jury records in order to prepare statistics revealing the government's use of peremptory challenge to strike black jurors in cases involving black defendants in criminal trials during the year 1974. Appellant cites 15 cases in which the United States Attorney's office used at least some of its peremptory challenges to preclude blacks from sitting on the jury in the trial of black defendants. Two of those cases

---

1. In *United States v. Cochran*, 475 F.2d 1080, 1082 (8th Cir.), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973), we noted:

 The trial court in determining admissibility weighs the prejudicial effect against the probative value of the evidence of the other criminal conduct. *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85, 90 (1964).

2. In fact, more than one court has held it to be a reversible abuse of discretion to *limit* inquiry to the "fact" of a prior felony conviction, excluding their number or nature, albeit in those cases a prosecution witness was involved. *See United States v. Miller, supra*, 478 F.2d 768 (4th Cir. 1973), and *Beaudine v. United States*, 368 F.2d 417, 421 (5th Cir. 1966). The Fifth Circuit in *Beaudine* noted:

 The one attacking credibility was entitled, at least in the first instance, to establish the number of convictions, the nature of each of the crimes charged, the date and time of conviction. Refusal to allow this minimum information to be developed could not be sustained by the accepted and salutary principle which prohibits the attacker going into the details of the crimes. [Footnote omitted.] * * * the law does not limit inquiry to whether there was a "felony" conviction. The nature of the crime is a relevant fact for the reason, if no other, that it is rightfully assumed that some types of crimes have a more immediate direct bearing than others on the element of veracity. [Footnote omitted.]

involved the first and second trials of this appellant.[3]

In appellant Carter's first trial there were four available blacks on the panel, two of whom were removed by peremptory challenge of the prosecution, and two of whom served upon the trial jury. In appellant's second trial the prosecution peremptorily challenged all five available black jurors. During the year 1974 in the 15 cited cases involving black defendants a total of 70 Negroes were potentially available as trial jurors and 57 of those were stricken by the government through the use of its peremptory challenges. Twelve were seated on the final trial juries. Appellant notes that the government thus excluded 81% of the Negroes potentially available to serve on the petit trial jury. In 7 of the 15 cases, or 47%, the government used its peremptory challenges to remove all available black jurors.

■ It is true that where by any action of a state[4] an individual is excluded solely because of race from serving on a grand or petit jury, equal protection of the laws has been denied. *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1126, 1221, 31 L.Ed.2d 536 (1972); *Whitus v. Georgia*, 385 U.S. 545, 17 L.Ed.2d 599, 87 S.Ct. 643 (1967); *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880). However, the Supreme Court in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), held a different rule must apply when such discrimination is alleged to have occurred as a result of the government's exercise of its peremptory challenges, for the very nature of the peremptory challenge "is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Swain v. Alabama, supra*, at 220, 85 S.Ct. at 836. The challenge may be exercised on grounds "normally thought

3. The following are listed by appellant as criminal cases involving black defendants which were taken to a jury trial in the United States District Court for the Western District of Missouri during the year 1974:

| Case | No. of Negroes on Jury Panel | No. of Negroes Peremptorily Challenged by the Government | No. of Negroes Seated on Trial Jury |
|---|---|---|---|
| U. S. v. Edgar Carter (1st Trial) | 4 | 2 | 2 |
| U. S. v. Edgar Carter (2nd Trial) | 5 | 5 | 0 |
| (c) | 5 | 5 | 0 |
| (d) | 4 | 4 | 0 |
| (e) | 5 | 5 | 0 |
| (f) | 6 | 5 | 1 |
| (g) | 6 | 2 | 4 |
| (h) | 4 | 2 | 2 |
| (i) | 4 | 4 | 0 |
| (j) | 5 | 4 | 1 |
| (k) | 3 | 3 | 0 |
| (l) | 5 | 5 | 0 |
| (m) | 6 | 5 | 1 |
| (n) | 3 | 2 | 0 * |
| (o) | 5 | 4 | 1 |

* One Negro peremptorily challenged by defendant

4. While *Swain v. Alabama, infra*, and its predecessors, involved action by a state and were decided under the Fourteenth Amendment, the Supreme Court recently noted in *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638, n. 2, 95 S.Ct. 1225, 1228, 43 L.Ed.2d 514, 519 (1975), that "[t]his Court's approach to Fifth Amendment equal protection claims has al-ways been precisely the same as to equal protection claims under the Fourteenth Amendment." Also, the Supreme Court has sustained a challenge to systematic exclusion from jury service under the Sixth Amendment right to jury trial. *See, Peters v. Kiff*, 407 U.S. 493, 500, 92 S.Ct. 2163, 33 L.Ed.2d 83, 92 (1971).

irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty." *Swain, supra,* at 220, 85 S.Ct. at 836.[5]

Appellant herein, however, asserts that not only were all Negroes improperly excluded in this case, but has submitted evidence in support of his claim that the United States Attorney's office has engaged in "systematic use of peremptory challenges against Negroes over a period of time." *See Swain* at 227, 85 S.Ct. 824. This claim therefore requires closer consideration.

The Supreme Court in *Swain* spoke to the defendant's "broader claim * * * that there has never been a Negro on a petit jury in either a civil or criminal case in Talladega County and that in criminal cases prosecutors have consistently and systematically exercised their strikes to prevent any and all Negroes on petit jury venires from serving on the petit jury itself." *Swain v. Alabama, supra,* at 222, 223, 85 S.Ct. at 837. The court responded:

> We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who

have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. *Cf. Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify. *Swain v. Alabama, supra,* 380 U.S. 202, 223–224, 13 L.Ed.2d 759, 85 S.Ct. 824, 837 (1965).

█ This court must thus resolve the question of whether the United States Attorney's office in the Western District of Missouri has in fact perverted the purposes of the peremptory challenge. We find that the appellant has not so established.

A closer examination of the statistical evidence presented in this appeal demonstrates that the District Court properly ruled that it did not set forth a prima facie case of improper use of the per-

5. Thus the court concluded:

* * * veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried * * * To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would

entail a radical change in the nature and operation of the challenge. The challenge, pro tanto, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned. *Swain v. Alabama, supra,* at 221–222, 85 S.Ct. at 836.

emptory challenge. *See, United States v. Pollard,* 483 F.2d 929 (8th Cir. 1973), *cert. denied,* 414 U.S. 1137, 94 S.Ct. 882, 38 L.Ed.2d 762 (1974). *Cf. United States v. Pearson,* 448 F.2d 1207 (5th Cir. 1971). First, appellant's figures demonstrate that in 8 of the 15 cited cases of alleged discrimination the prosecution accepted juries which in fact had one or more blacks, despite the fact that in each case its peremptory challenges were sufficient to exclude any and all blacks from sitting on the jury.[6]

Second, since the Supreme Court in *Swain* made it clear that race or other group affiliation is in fact a legitimate ground for challenge in an individual case, the record before us does not go far enough to demonstrate that blacks were excluded from juries "for reasons wholly unrelated to the outcome of the particular case on trial." *Swain, supra,* at 224, 85 S.Ct. at 838. It is difficult to conclude from only 13 cases, excluding appellant's, involving only black defendants and in over half of which there were in fact one or more black jurors accepted, that the United States Attorney's office in the Western District of Missouri is systematically excluding Negroes from juries, and for reasons wholly unrelated to the outcome of the particular case on trial. Similarly, the record is silent as to the peremptory challenge practices of the United States Attorney's office in cases involving nonblack defendants. We are thus unable to conclude from this record that the prosecutor is "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim may be" peremptorily striking blacks from service on petit juries. *Swain, supra,* at 223, 85 S.Ct. at 837. The appellant having failed to so establish, we simply note that the defendant in a criminal case has

no constitutional entitlement to demand a proportionate number of his race on the jury which tries him. *Swain v. Alabama, supra,* at 208, 85 S.Ct. 824; *Cassell v. Texas,* 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1949); *Thomas v. Texas,* 212 U.S. 278, 282, 29 S.Ct. 393, 53 L.Ed. 512, 513 (1908); *Gibson v. Mississippi,* 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1895); *Virginia v. Rives,* 100 U.S. 313, 322–323, 25 L.Ed. 667 (1879).

We are not unmindful of the serious question regarding practices of the United States Attorney's office in the Western District of Missouri raised by appellant's evidence. We are also aware of the heavy burden which *Swain* places upon the defendant challenging the prosecutor's use of the peremptory challenge. We have been able to find no case since the *Swain* decision in which this burden has been met. This burden flows from the discretionary nature of the peremptory challenge itself. We emphasize, however, that this burden is not insurmountable. We conclude only that the appellant's evidence of government conduct in these cases does not establish a systematic exclusion over an extended period of time, from which we might conclude that "the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population." *Swain, supra,* at 224, 85 S.Ct. at 838.

### III.

For this asserted error, appellant claims that the court improperly questioned a defense witness in the presence of the jury. His contention is based upon the following colloquy:

BY MR. BRADSHAW:

Q. Would you state your full name for the Court, please?

---

**6.** Rule 24(b) of the Federal Rules of Criminal Procedure provides in part:

> If the offense charged is punishable by imprisonment for more than one year, the government is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges.

In all 15 cases cited by appellant there were six or fewer blacks on the panel. See n. 3. Thus, the government could have excluded all blacks from the final jury in each case.

A. Dorothy Frances Gough.

Q. Where are you employed, Mrs. Gough?

A. Do I have to answer that? I'd rather it not be known.

THE COURT: For your own safety?

THE WITNESS: Yes, sir.

THE COURT: You don't have to answer it.

A federal judge may ask questions directly of a witness. *Kramer v. United States*, 408 F.2d 837, 841 (8th Cir. 1969); *Woodring v. United States*, 311 F.2d 417, 421 (8th Cir.), *cert. denied*, 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963). It is when a judge becomes an advocate for one party that he exceeds his discretion. *Kramer v. United States, supra*, at 841; *Franano v. United States*, 310 F.2d 533, 537 (8th Cir. 1962), *cert. denied*, 373 U.S. 940, 83 S.Ct. 1545, 10 L.Ed.2d 694 (1963). The quoted exchange falls within the court's discretion. The discretionary right to ask questions of a witness certainly includes the right to respond to questions directed to the court by a witness on the stand. It may have been better, as appellant asserts, to have conducted the conversation out of the hearing of the jury. But we can hardly conclude that appellant was prejudiced thereby. Counsel for the appellant had previously questioned this witness at Carter's first District Court trial, and it should have been clear by this stage that Mrs. Gough had expressed concern about her safety. We find no prejudice to the appellant.

## IV.

Finally, it is seriously contended that the District Court denied appellant a fair trial by its comments to the jury on the evidence at the close of the case. Appellant argues "[t]he Court's comments implied that it is incredible that government agents and a government informant would commit perjury by testifying that appellant distributed the controlled substance and that, therefore, the appellant's testimony is not worthy of belief."

The trial judge, as appellant concedes, has the right to fairly comment upon the evidence. *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 525, 77 L.Ed. 1468 (1933); *United States v. Williams*, 505 F.2d 947 (8th Cir. 1974); *Kramer v. United States, supra*. However, the failure of the judge to cautiously exercise his right to comment may easily result in prejudice to litigants' rights, particularly in a criminal case. *Quercia v. United States, supra*; *United States v. Dunmore*, 446 F.2d 1214 (8th Cir. 1971), *cert. denied*, 404 U.S. 1041, 92 S.Ct. 726, 30 L.Ed.2d 734 (1972); *Ray v. United States*, 367 F.2d 258 (8th Cir. 1966), *cert. denied*, 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785 (1967). While "[i]t is doubtless difficult at times to visualize the line between fairness and unfairness and between legitimate comment and advocacy * * * the judge must not become an advocate." *Boatright v. United States*, 105 F.2d 737, 739 (8th Cir. 1939). *See also United States v. Wright*, 459 F.2d 65 (8th Cir. 1972). As Judge Lay succinctly noted in *Ray v. United States, supra*, at 262, "It may well be the less comment * * * by the trial judge * * * the less opportunity for prejudice to basic rights to a fair trial."

We cannot approve the comments and must conclude that the extent to which the trial court participated was unnecessary, injudicious and improper. *Cf. United States v. Lord*, 475 F.2d 763 (9th Cir. 1973), *cert. denied*, 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974). However, this court must nevertheless also conclude that such activities prejudiced the defendant before a new trial may be ordered on such grounds. *Gant v. United States*, 506 F.2d 518 (8th Cir. 1974), *cert. denied*, 420 U.S. 1005, 95 S.Ct. 1449, 43 L.Ed.2d 764 (1975); *United States v. Schrenzel*, 462 F.2d 765 (8th Cir.), *cert. denied*, 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972); *United States v. Dunmore, supra*; *Woodring v. United States, supra*, 311 F.2d 417 (8th Cir.), *cert. denied*, 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414 (1963); *Franano v.*

United States, supra, 310 F.2d 533 (8th Cir. 1962), cert. denied, 373 U.S. 940, 83 S.Ct. 1545, 10 L.Ed.2d 694 (1963). In the last analysis, we conclude that they did not.

Appellant's reliance upon this court's decision in United States v. Dunmore, supra, is misplaced. This court in Dunmore had before it a jury instruction which "restated, in detail, the evidence tending to prove the defendants' guilt, yet made no effort to summarize the evidence of their innocence." United States v. Dunmore, supra, at 1217. Here, as appellant concedes, the trial court did summarize the evidence of both the prosecution and the defendant.

Moreover, in considering whether or not a trial court's improper comments upon the evidence to the jury result in prejudice to the defendant, those comments should not be viewed in isolation. First, a charge "must be viewed in its entirety in determining whether a jury would have been misled or unduly influenced by the portions to which objection has been made." Franano v. United States, supra, at 538. Second, the trial setting in which the charge is made must also be considered before we may find prejudice. As we stated in United States v. Williams, supra, at 948–949:

> Even if we assume that certain of the court's remarks do constitute error, we would have to hold that they are harmless only. The Government's case was strong, the trial brief, and the issues few and uncomplicated. Moreover, the court scrupulously cautioned the jury that it alone bore responsibility for deciding questions of fact. In this setting, we find no error requiring reversal.

Viewing the charge as a whole and the trial setting in which it was given, we are forced to conclude that the challenged comments did not result in prejudice to the appellant. As if conscious of the impropriety of its biased remarks and in an effort to counteract their effect, the trial court on at least seven occasions throughout its comments upon the evidence reminded the jury in forceful language of its exclusive prerogative to determine the facts. See Franano v. United States, supra. The evidence of guilt adduced by the government was overwhelming. The sole factual issue at trial involved the resolution of contradicting testimony between the appellant and government agents. The jury, as the trial judge commented, must necessarily have decided that the agents in fact perjured themselves if it were to find the appellant not guilty. While the characterization was injudicious and unnecessary, it nevertheless was literally true. Under all of these circumstances, we find no reversible error.

Affirmed.