UNITED STATES of America, Plaintiff-Appellee,

v.

Sammie Jud DIXON, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Adolph GREENLEAF, Defendant-Appellant.

Nos. 76–1426, 76–1347.

United States Court of Appeals, Ninth Circuit.

Dec. 22, 1976.

Samuel G. Jackson, Jr., Deputy Federal Public Defender (argued), Los Angeles, Cal., for Adolph Greenleaf.

Joan Celia Lavine (argued), Los Angeles, Cal., for Sammie Jud Dixon.

Wilfred H. Hearn, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS and KENNEDY, Circuit Judges, and JAMESON,* District Judge.

ANTHONY M. KENNEDY, Circuit Judge:

Appellants Greenleaf and Dixon, along with codefendant Feazel, were tried and convicted by a jury for conspiring to dis-

* Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

tribute heroin, a violation of 21 U.S.C. §§ 846 and 841(a)(1). This appeal followed.

Porter, a government informant, and appellant Greenleaf had known each other for about two years. The alleged conspiracy began when Greenleaf met with Porter at a beauty college where the latter was a student. Porter testified that at this meeting Greenleaf displayed a few balloons of heroin and asked him if he knew anyone who might purchase the narcotic. Porter responded that he could introduce Greenleaf to some out-of-town buyers.

Porter introduced Greenleaf to Agent Talton of the Drug Enforcement Administration, who posed as the out-of-town narcotics purchaser. Following a series of negotiations, the parties met on a residential street in Los Angeles. Talton and two other agents, Thornton and Smith, were to complete the purchase while a surveillance team waited nearby to make the arrest. The agents remained in their automobile as appellants Greenleaf and Dixon and codefendant Feazel approached. Dixon asked the agents for the money and through the car window handed Smith a brown paper sack containing a clear plastic bag. Agent Talton gave a signal to the surveillance team to make the arrest, but they failed to respond. After repeatedly requesting the purchase money, Dixon became suspicious and grabbed the paper sack containing the plastic bag from Agent Smith, and the defendants left the scene. The surveillance team arrested the defendants shortly afterwards, but the brown sack and its contents were never recovered.

At trial, Agent Smith testified that he had examined the contents of the plastic bag and had found a brown, powdery substance; from its texture, color, and odor, he concluded that it was heroin. Defendants contended they were not guilty of conspiracy to distribute heroin since they were only trying to defraud the purchasers by selling a harmless substitute. The jury did not believe their story and returned a verdict of guilty.

Appellants claim that there was insufficient evidence to sustain the conspiracy conviction. We disagree. Considered in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the evidence discloses sufficient facts on which the jury could conclude beyond a reasonable doubt that appellants had conspired to sell heroin. The testimony of the government agents about events leading up to the appellants' arrest sufficiently demonstrates that a sale of heroin was planned. The failure to recover the bag containing the brown substance does not mandate a contrary conclusion. Nor is it material that the narcotic transaction was not actually consummated. A conspiracy "does not require 'mission accomplished,' only 'mission attempted.' An overt act by the conspirators in an effort to accomplish the mission satisfies the requirement of the statute." *United States v. Root*, 366 F.2d 377, 383 (9th Cir. 1966), *cert. denied*, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967); *United States v. Croxton*, 482 F.2d 231 (9th Cir. 1973).

Appellants next contend that the trial judge erred in excluding certain impeachment evidence. The first witness called by the defense was the informant, Porter, who had not been called by the prosecution. Before Porter testified, defense counsel advised the trial court that they intended to impeach Porter with evidence of four prior convictions: a 1967 conviction for robbery, a 1967 conviction for forgery, a 1970 conviction for forgery, and a 1971 conviction for distribution of narcotics. Over defense objection, the court ruled that only the 1971 conviction for distribution of narcotics could be admitted to impeach Porter. The district court excluded the 1967 convictions on the ground that they were too remote. It is unclear from the record whether the trial court excluded the 1970 forgery conviction because it was too remote or because it involved a misdemeanor. We conclude that these rulings were error.

By proffering the evidence of Porter's prior convictions, the defendants sought to impeach the credibility of their own witness. Before enactment of the Federal

Rules of Evidence, that practice was generally not permitted. *See* C. McCormick, Evidence § 38 (1st ed. 1954).[1]

Since the trial took place in January 1976, however, the proceedings and the court's evidentiary rulings were governed by the Federal Rules of Evidence, Pub.L. 93–595 § 1, 88 Stat. 1929 (1975). The Federal Rules abrogate the former practice and instead provide: "The credibility of a witness may

be attacked by any party, including the party calling him." Fed.R.Evid. 607. Hence, the appellants could impeach Porter.

■ Fed.R.Evid. 609 controls the admissibility of evidence of prior convictions for impeachment purposes.[2] Rule 609(a)(1) allows impeachment of a witness by evidence of prior convictions if the crime was punishable by death or imprisonment for over a year, provided the court determines that

1. Among the reasons for the rule were first that the party, by calling the witness to testify, vouched for his trustworthiness. Second, it was believed that the power to impeach was the power to coerce the witness to testify as desired under the implied threat of "blasting his character" if he did not. C. McCormick, Evidence § 38 (1st ed. 1954). The Federal Rules of Evidence abandoned the exception as based on false premises, since denial of the right to impeach left the party at the mercy of the witness. Notes of Advisory Committee on Proposed Rules, Fed.R.Evid. 607.

   A number of exceptions to the rule emerged. For example, in this circuit, before the Federal Rules of Evidence went into effect, a party could impeach his own witness by an out-of-court statement where: (1) the witness' testimony was contrary to that which had been anticipated and (2) the testimony was actually injurious to the case of the party who called the witness. *United States v. Scarbrough*, 470 F.2d 166 (9th Cir. 1972); *Bushaw v. United States*, 353 F.2d 477 (9th Cir. 1965), *cert. denied*, 384 U.S. 921, 86 S.Ct. 1371, 16 L.Ed.2d 441 (1966). Impeachment of one's own witness was also allowed where the witness was hostile. *E. g., United States v. Lemon*, 497 F.2d 854 (10th Cir. 1974); *see United States v. Ghaloub*, 385 F.2d 567 (2d Cir. 1966). In this case, an examination of the transcript shows that Porter, the informant, demonstrated some hostility to questions propounded by the defense.

2. Fed.R.Evid. 609(a) and (b) provide:

   (a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

   (b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the

witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

We recognize that the first sentence of Rule 609(a) states that evidence of conviction of a crime may only be admitted if elicited from the witness or established by public record during cross-examination. This could be construed as a requirement that if a witness is impeached on direct examination, the evidence of a conviction cannot be established by public record. The rule should not be read so narrowly. The phrase providing that the evidence is admissible during cross-examination of a witness was a clarifying amendment added by the Senate. S.Rep.No.93–1277, 93d Cong., 2d Sess. 15 (1974), U.S.Code Cong. & Ad.News 1974, p. 7051, *reprinted in* 20 U.S.S.Ct. Digest 205 (Appendix 2). The purpose of the amendment was to make clear that evidence of a prior conviction is not admissible if a person does not testify. The Senate Report states: "It is to be understood, however, that a court record of a prior conviction is admissible to prove that conviction if the witness has forgotten or denies its existence." *Id.*, U.S.Code Cong. & Ad. News 1974, p. 7061. It seems clear from the legislative history that on direct examination, a party may elicit the evidence of a prior conviction from his own witness; if the witness has forgotten or denies the existence of the conviction, the party may then introduce evidence of the conviction by public record, even though this does not take place on cross-examination. Moreover, Rule 607, by its terms, places no limitation on the manner in which a party may impeach his own witness, and there is no reason to believe that such a witness cannot be impeached by evidence of a prior conviction.

the probative value of admitting the evidence outweighs its prejudicial effect to the defendant. Rule 609(a)(2) permits impeachment by evidence of a prior conviction if the crime involved dishonesty or false statement, regardless of the punishment.[3]

■ Rule 609(b) provides a mechanism for dealing with remote convictions. It declares that evidence of a conviction over ten years old is inadmissible for impeachment purposes unless at trial the court determines, by standards set forth in the rule, that the ten year bar should be lifted. The juxtaposition of Rule 609(a) and Rule 609(b) leads us to conclude that all convictions for crimes of the type described in Rule 609(a) offered for impeachment purposes must be admitted if such convictions are less than ten years old, subject only to the stated exception to Rule 609(a)(1) requiring exclusion of Rule 609(a)(1) convictions where their probative value is outweighed by their prejudicial effect to the defendant.[4]

■ In the instant case, appellants first sought to impeach Porter with the 1967 robbery conviction. The trial court excluded the evidence as too remote. Since the conviction was less than ten years old, the evidence could not be excluded under Rule 609(b). Nor could it be excluded under Rule 609(a)(1) unless the remoteness of the

conviction caused its prejudicial effect to the defendants to outweigh its probative value. Here, however, the defense itself proffered the evidence. It is quite clear that the effect, if any, of the evidence on the jury could only have benefited the defendants. The prejudice exception of Rule 609(a)(1), therefore, could not apply, and the trial court erred in excluding this evidence.

The defense further sought to introduce evidence of two forgery convictions, the first of which occurred in 1967, the second in 1970. These convictions should also have been admitted to impeach Porter. Since forgery is a crime involving "dishonesty or false statement," see, e. g., United States v. DiLorenzo, 429 F.2d 216 (2d Cir. 1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971), and since the convictions were less than ten years old, their admissibility at the trial is governed by Rule 609(a)(2).

By its terms, Rule 609(a)(2) affords the trial court no discretion to exclude evidence of convictions of a crime involving dishonesty or false statement. Given the scheme set up in Rule 609(b), we doubt that the trial court can ever exclude Rule 609(a)(2) convictions as remote where such convictions are less than ten years old. This conclusion is buttressed by Congress'

3. In defining the phrase "dishonesty and false statement," the Conference Report on the Federal Rules stated that: "[T]he Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness or falsification bearing on the accused's propensity to testify truthfully." H.R.Rep.No.93-1597, 93d Cong., 2d Sess. 9 (1974), U.S.Code Cong. & Ad.News 1974, p. 7103, reprinted in 20 U.S.S.Ct. Digest 231 (Appendix 3). See also United States v. Jackson, 405 F.Supp. 938 (E.D.N.Y.1975).

The term crimen falsi has been defined as a crime which "involves the element of falsehood, and includes everything which has a tendency to injuriously affect the administration of justice by the introduction of falsehood and fraud . . . . This phrase is also used as a general designation of a class of offenses, including all such as involve deceit or falsifica-

tion; e. g., forgery, counterfeiting, using false weights or measures, perjury, etc." Black's Law Dictionary 446 (Revised 4th ed. 1968).

4. Cf. H.R.Rep.No.93-1597, 93d Cong., 2d Sess. 9-10 (1974), reprinted in 20 U.S.S.Ct. Digest 231-32. (Appendix 3). We do note, however, that under Rule 403, the trial court may exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. It is conceivable that in some cases, Rule 403 might afford the trial court discretion to exclude evidence of a prior conviction even where the defendant in a criminal case might not be the party prejudiced. Assuming such discretion sometimes exist, in this case exclusion of the evidence of the informant's convictions could not be justified under Rule 403. Furthermore, the trial court did not base its evidentiary ruling on Rule 403.

belief that crimes involving dishonesty or false statements are always highly probative on the issue of a witness' credibility. H.R.Rep.No.93–1597, 93rd Cong., 2d Sess. 9 (1974), *reprinted in* 20 U.S.S.Ct. Digest 231 (Appendix 3). In any event, since crimes of the type covered in Rule 609(a)(1) may be excluded only upon a showing of prejudice to the defendant, it follows a fortiori that any conceivable exception to Rule 609(a)(2) must involve a showing of prejudice to the defendant which is at least as strong. In view of the foregoing, it is apparent that neither the 1967 nor the 1970 forgery conviction could be excluded as remote.

If the 1970 conviction was excluded because it was a misdemeanor, that too was incorrect. Rule 609(a)(2) applies to all crimes involving dishonesty or false statement, irrespective of whether the conviction was for a felony or a misdemeanor.

■ The Government argues that even if exclusion of the evidence constituted error, the error was harmless. We disagree. The Government's case-in-chief did not depend on evidence obtained from the informant. Appellants may indeed have called the informant to the stand, for reasons known only to them, solely to elicit incriminating testimony from him and then impeach his credibility. If appellants' trial strategy in calling Porter was limited to such a meaningless purpose, we might have found the error harmless. But a more plausible interpretation of the defense strategy was that the informant was called to support various defense theories, however tenuous or inconsistent. The informant's testimony could conceivably have supported appellants' entrapment claim. The defense also may have been trying to show that Porter never analyzed the purported sample of heroin; that Greenleaf's behavior in dealing with Porter was inconsistent with a heroin transaction; and that, in fact, appellants were simply planning to "rip off" the purchasers by selling them a harmless substance. Porter's testimony related to these matters, but on the stand he made statements that further incriminated appellants, both on direct and cross-examination. The prejudice in not permitting appellants to exercise their undoubted right to impeach is therefore established.

The Government further contends that admitting into evidence the informant's 1971 narcotics conviction, combined with an instruction to the jury that they could take the narcotics conviction into account in determining the informant's credibility, sufficiently impeached Porter so that excluding the remaining forgery and robbery convictions was nonprejudicial. We reject this contention as well. Forgery, because it is a crime involving dishonesty or false statement, may have a much greater impact on the jury's perception of a witness' veracity than does a single narcotics violation. Perhaps to a lesser extent, this is also true of robbery. The jury, moreover, might have been less likely to believe Porter had they been aware that he had been convicted of four crimes, rather than merely the one that was admitted.

■ In view of these conclusions, we need not address appellants' other contentions.[5]

REVERSED AND REMANDED.

---

5. One argument should be specifically rejected so that counsel will refrain from repeating it in any further proceedings. Appellants contend that even if they planned to sell heroin, a conviction for conspiracy would be improper if, by reason of some mistake, the bag contained a harmless substance. This argument is frivolous. We would not consider it had counsel not pressed the point so strenuously at oral argument.