**UNITED STATES of America, Plaintiff,**

v.

**Russell E. PHILLIPS, et al., Defendants.**

**No. 78–03382–04–CR–W–2.**

United States District Court,
W. D. Missouri, W. D.

April 28, 1980.

Robert Schneider, Asst. U. S. Atty., Kansas City, Mo., for United States.

C. Brooks Wood, Kansas City, Mo., for defendant Bledsoe.

Richard L. Anderson, Reeds Spring, Mo., for defendant Burks.

James Crabtree, Shawnee Mission, Kan., for defendant Cloninger.

James H. Bernard, Jr., Kansas City, Mo., for defendant Stafford.

MEMORANDUM AND ORDER ON RENEWED MOTION OF DEFENDANT BLEDSOE TO SUPPRESS EVIDENCE OF FELONY CONVICTION, JOINED BY OTHER DEFENDANTS, SIMILAR MOTION OF DEFENDANT CLONINGER, AND MOTION TO SEVER OF THE DEFENDANT STAFFORD

URBOM, Chief Judge.

The defendants Bledsoe and Burks[1] are on trial with four other defendants on charges of conspiracy, racketeering, mail fraud and securities fraud brought under 18 U.S.C. §§ 1961, 1962, 1963, 1341 and 2, and 15 U.S.C. §§ 77q(a) and 77x.

Present charges center upon activities of the defendants with two agricultural cooperatives that operated in Missouri, one agricultural cooperative that was set up in Oklahoma, and another that existed in Arkansas. The motif of the prosecution is that the creating and operating of these cooperatives were for the purpose of defrauding investors by siphoning off investors' funds for the personal use of the defendants.

The defendants Bledsoe and Burks were convicted in the United States District Court for the Southern District of Illinois on July 28, 1979, of mail fraud and conspiracy to commit mail fraud in connection with the activities of another agricultural cooperative in Illinois.

The cooperatives related to the present charges were Progressive Farmers Association (PFA), United Farmers of America, Inc. (UFA-Missouri), Consumer-Farmers Association (CFA), and United Farmers Association of America, Inc. (UFA-Oklahoma). The cooperative directly involved in the Illinois charges was Illinois Farmers Marketing Association (IFMA).

Before commencement of the trial I denied the defendant Bledsoe's motion to suppress the government's use for any purpose of the Illinois conviction.[2] The trial began October 2, 1979, to a jury. On March 31, 1980, at the close of the prosecution's case in chief that defendant renewed the motion in light of more information received about that prior felony conviction. The defendants Burks and Stafford have orally joined the renewed motion, and the defendant Clo-

---

1. Burks, who was a defendant in the case at the time this motion was filed, has since been severed.

2. The primary reliance by the movant was on *United States v. Martinez*, 555 F.2d 1273 (C.A. 5th Cir. 1977), for the proposition that a conviction based on the same transaction or conduct as the one being tried is actually contemporaneous and therefore not probative of the defendant's readiness to do evil or falsify his testimony. I held that the defendant Bledsoe is charged here with crimes based on transactions separate and distinct from those underlying the prior conviction, that the Illinois conviction is not "contemporaneous," as defined by the court in *Martinez*, and that the *Martinez* decision is therefore not applicable.

ninger has separately and orally moved for the same relief for a somewhat different reason. Evidence was received on the motions on April 15.

The defendant Bledsoe's argument on the renewed motion is built almost entirely upon an observation by Judge Waldo Ackerman, the judge who presided at the trial in the District of Illinois at which the defendants Bledsoe and Burks were convicted. The judge's comment was at a sentencing hearing and included the following:

"You see, I would have rathered sentenced Mr. Burkes [sic] and Mr. Bledsoe after that case [the present Missouri-based action] had been concluded. I'd know then what happened there. The problem is that the jury almost necessarily had to assume, and I don't know if what the jurors thought, but I assume they to some extent at least were saying that this was a fraud exported to Illinois from Missouri by Mr. Burkes [sic] and Mr. Bledsoe. Now, if it wasn't, if it was a legitimate—"

Counsel for the defendant Bledsoe now extracts the words, ". . . the jury almost necessarily had to assume . . . that this was a fraud exported to Illinois from Missouri by Mr. Burkes [sic] and Mr. Bledsoe . . ." and argues that those words mean that

the Illinois jury "found defendant's conduct in Illinois culpable only by viewing it as an extension—an importation—of fraudulent conduct in Missouri;"

the conviction was based on "a presumption of criminal culpability with regard to PFA;"

The conviction was "based in large part on its premature assumption;"

the "'validity' of the conviction . . . depend(s) on the jury's finding in the Missouri case . . .;"

the Illinois jury made a "'conditional' determination" of guilt; and

"It is highly doubtful whether defendant could or would have been convicted in

Illinois without the introduction of PFA evidence."

Suggestions in Support of (Renewed) Motion of Defendant Bledsoe to Suppress the Government's use for Impeachment of his Felony Conviction in United States District Court for the District of Illinois, pages 2, 3, 6

■ This exuberant reading of a remark of the sentencing judge is not warranted. The judge was not announcing findings of fact or conclusions of law, but discussing sentencing options with counsel. The judge's concern was that the ultimate disposition of charges in this Western District of Missouri case might have a legitimate bearing on the sentence that could be imposed in the Illinois case. After discussing the subject with counsel, he said that he would sentence "assuming the worst"—that is, that Bledsoe and Burks would be found guilty in the Missouri action—and then, if they were found not guilty in the Missouri case, he would be inclined "to think that your argument for a light sentence or probation is somewhat persuasive" and "what they did here takes on a less serious tone." He concluded that if the defendants "are found not to have been involved in any kind of criminal activity there [in the Missouri action] I will reconsider the sentence and reduce it on the thirty-five motion which I am sure you will file."

Judge Ackerman did not suggest that the validity of the Illinois conviction rested upon a verdict of guilty in this Missouri proceeding. His reasoning always related to sentence, never to innocence; it always had to do with *degree* of guilt, never to *lack* of guilt.

Furthermore, Bledsoe's Illinois counsel, John Martin, has not thought that fraud in the Missouri operation was an issue in the Illinois trial. He disagreed at once with Judge Ackerman's indication that the jury must have assumed an exporting of fraud from Missouri to Illinois, and testified at the hearing on Bledsoe's present renewed

motion that in the Illinois action the government never claimed or argued that the Missouri activities amounted to fraud. Martin's description of the evidence as to the role Bledsoe played in the Illinois Farmers Marketing Association, the farm cooperative around which the Illinois charges pivoted, was:

> "Well, the Government's theory as stated in their trial briefs during the trial and as argued throughout the trial was that PFA itself was not a fraud or they did not contend that it was a fraud, but that in selling the PFA concept, the farmers marketing concept, to investors in Illinois, Mr. Bledsoe and Mr. Burks, as well, had overstated the success of the PFA operation in Missouri and had led people to believe that PFA was a profitable organization that was going great guns, whereas, in fact, it was losing money, and according to the Government's theory in that case, doomed from Day 1."

Transcript of testimony, Volume 114, page 107.

■ The argument of the defendant Bledsoe on the renewed motion has, first, a constitutional tone. Although conceding that the double jeopardy clause has apparently not been extended by interpretations so far as to bar the present trial, counsel nonetheless argues that use of the Illinois conviction should be prevented by that concept to protect "against more than one jury determination on the question of defendant's criminal liability with respect to PFA." (Suggestions, page 5) No cases in point or analogous are cited and I have found none.

Another constitutionally phrased argument is that it would be fundamentally unfair and therefore violative of due process to permit use of the Illinois conviction, because that conviction is based on activities that are at issue in this current trial.

It is true that at least five witnesses in the Illinois trial testified primarily about Mr. Bledsoe's involvement with PFA, the farm cooperative at the center of the present Missouri trial. However, the presentation in the Illinois trial of evidence of Missouri activities of Bledsoe and Burks does not result in a conclusion that double jeopardy or a denial of due process will be experienced if the Illinois conviction impeaches those defendants. The Illinois charges were distinct and separate from the Missouri charges; use of the conviction as impeachment is not allowing "more than one jury determination on the question of defendant's criminal liability with respect to PFA," as argued by the defendant Bledsoe. It bears, rather, on whether the jury in this present case is to believe the testimony of Mr. Bledsoe and Mr. Burks. To say that the jury here should decide all issues without any input from the Illinois jury on the defendants' credibility is to count the Illinois jury's conclusion wholly without validity or so weak as to have no value. The record before me affords no support for such a gutting. Judge Ackerman did not so view the verdict in Illinois, and neither do I.

The Illinois jury, it is pointed out by defense counsel, received some evidence of the activities of the defendants Burks and Bledsoe in Missouri, but a full airing was not made of the nature of those activities and neither Burks nor Bledsoe testified in the Illinois proceeding. That statement is quite true. The indictment did not allege that any act of Bledsoe or Burks in Missouri or relating to PFA was fraudulent, but some evidence of their activities in Missouri relating to PFA was received. Nothing prevented a full exploration of those acts to the extent any party wanted them explored. Bledsoe and Burks did not testify, as a matter of trial strategy, primarily to avoid jeopardizing a motion that was pending in the current case here as well as in the Illinois proceeding and because the defendants' counsel thought that the defendants would not be convicted in Illinois. That decision not to testify—and, so far as the record shows, the decision as to whom to call as witnesses and how much cross-examining to do—was a deliberate choice; it does not now form a solid base for arguing that the defendants should be relieved of the burden of that choice.

**512**

■ The defendant Cloninger's motion is based upon the same factual footing as the Bledsoe renewed motion, but an additional note of prejudice is urged, because, it is said, if trial in the present case had been had when the defendant Cloninger wanted it and urged it, the Illinois conviction would not yet have occurred and thus would not have been capable of haunting the testimony of Bledsoe and Burks. That is a reasonable argument, but does not render use of the conviction, limited to impeachment only, fundamentally unfair. Events change people's positions and affect people's credibility. Fairness does not demand that conditions be maintained in the light that is most favorable to a defendant. The arising of an event, unfavorable to a defendant, may be harmful to the defendant's position, but that does not make it unfair.

Stepping aside from constitutional thrusts, the defendant Bledsoe argues that I should exclude use of the convictions under Rule 403 of the Federal Rules of Evidence. He does not mention Rules 102 and 611, but they could be added to make the analysis complete. Those rules say:

"Rule 403. EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

"Rule 611. MODE AND ORDER OF INTERROGATION AND PRESENTATION.

"(a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and

(3) protect witnesses from harassment or undue embarrassment.

"(b) Scope of cross-examination. Cross-examination should be limited to the subject matter of the direct examination and the matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

"Rule 102. PURPOSE AND CONSTRUCTION. These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

The trouble is that Rule 609(a)(2), which is specific and direct, while Rules 403, 611, and 602 are broad and general, declares:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime . . . (2) involved dishonesty or false statement, regardless of the punishment."

■ A conviction for fraud and conspiracy to commit fraud under 18 U.S.C. §§ 1341 and 371 is one involving "dishonesty or false statement" within the meaning of Rule 609(a)(2).[3] The rule says, not that evidence of such a conviction *may be admitted*, but *shall be admitted*. The Notes of the Conference Committee, explaining the compromise version of proposals of the Senate and House of Representatives, which compromise version became Rule 609, state:

"The admission of prior convictions involving dishonesty and false statement is not within the discretion of the Court. Such convictions are peculiarly probative of credibility and, under this rule, are always to be admitted. Thus, judicial

3. *United States v. Brashier*, 548 F.2d 1315 (C.A. 9th Cir. 1976), cert. denied, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977). The Notes of the Conference Committee, House Report No. 93-1597, states: "By the phrase 'dishonesty and false statement' the conference means crimes such as . . . criminal fraud . . ."

discretion granted with respect to the admissibility of other prior convictions is not applicable to those involving dishonesty or false statement."

A purer statement of an intent of Congress that evidence of a conviction involving dishonesty and false statement be heard by the jury would be hard to draft.

Weinstein's Evidence, § 609[03a], pages 609–73, says that it is yet an open question whether a judge has discretion to exclude a conviction involving dishonesty or false statement, but opines that "whatever discretion (outside of that specified) remains under Rules 102, 403 and 611(a) is exceedingly narrow since Congress considered the prior conviction to impeach issue more fully than any other single rule and the compromise it reached should be respected by the courts." I agree.[4] It is true that if admission of the conviction violated the Constitution, the evidence would not be received. But that would not be from judicial discretion or congressional directive, but from constitutional imperative.

■ Neither Rule 609 nor any other, however, defines the scope of the evidence to be received, once a determination has been made that the prior conviction involved dishonesty or false statement. "[E]vidence that he has been convicted of a crime" shall be admitted, according to the rule. It seems to me that discretion is thereby left in the judge to decide the range of that evidence. I have found no cases dealing with that subject within the confines of Rule 609(a)(2). Some help may be afforded by cases decided under Rule 609(a)(1), which differs from (a)(2) in specifically granting discretion.

In *United States v. Carter*, 528 F.2d 844, 847 (C.A. 8th Cir. 1975), cert. denied, 425 U.S. 961, 96 S.Ct. 1745, 48 L.Ed.2d 206 (1976), the court held it not to be an abuse of discretion under Rule 609(a)(1) to permit evidence not only of the fact of conviction

but the "exact nature and number" of those convictions as well. The court in a footnote said:

"In fact, more than one court has held it to be a reversible abuse of discretion to *limit* inquiry to the 'fact' of a prior felony conviction, excluding their number or nature, albeit in those cases a prosecution witness was involved. See *United States v. Miller*, supra, 478 F.2d 768 (4th Cir. 1973), and *Beaudine v. United States*, 368 F.2d 417, 421 (5th Cir. 1966) . . ."

In the *Beaudine* case the court said that evidence of the date and time of conviction was also to be allowed. *Martin v. United States*, 404 F.2d 640, 643 (C.A. 10th Cir. 1968), and *Tucker v. United States*, 409 F.2d 1291, 1294 (C.A. 5th Cir. 1969), both pre-Federal Rules of Evidence cases, allowed evidence of the nature and date of the felony conviction.

■ The danger of unfair prejudice in the case at bar can be dissipated by a controlled receipt of evidence about the similarity of the charges in the previous and present cases. The fact that the previous conviction arose from activities in a farm cooperative is singularly susceptible to an imputation of guilt from activities in another farm cooperative. If that feature is eliminated, the main risk of unfairness will be overcome.

The presence of the element of fraud in the prior conviction, while giving the prior conviction an extra punch, need not be concealed from the jury, because that feature gives the jury some rational basis for connecting the prior conviction with the defendant's credibility.[5]

As the fact of conviction of one count involving fraud has probative value on credibility, so conviction on more than one count has similar value without unfairness. The number of counts may be shown. See *United States v. Leach*, 429 F.2d 956 (C.A. 8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971).

---

4. Accord: *United States v. Dixon*, 547 F.2d 1079 (C.A. 9th Cir. 1976). See also, *United States v. Hayes*, 553 F.2d 824 (C.A. 2nd Cir.), cert. denied, 434 U.S. 867, 98 S.Ct. 204, 54

L.Ed.2d 143 (1977); *United States v. Smith*, 551 F.2d 348 (D.C.Cir. 1976).

5. *People v. Garth*, 93 Mich.App. 308, 287 N.W.2d 216 (1979).

That the conviction arose in the United States District Court for the Southern District of Illinois is of nominal value to a jury's deciding whether a defendant is a truthful person and carries a danger that the jury would apply the interstate feature of that fact to the culpability of the defendant in the present case, which contains evidence of a connection between farm cooperatives in Missouri, Oklahoma, and Arkansas and in which the prosecuting attorney's opening statement asserted a connection between "the Illinois coop" and the charges alleged in this case. Evidence of that connection has been intercepted, however, under Rule 403 of the Federal Rules of Evidence.

The nature of the sentence given as a result of the prior conviction goes more to the degree of culpability of a defendant and to a host of other factors relating to protection of society, deterrence of the defendant and others, and prospects of rehabilitation, than to the defendant's truth-telling propensities. No evidence of the sentence imposed in the Illinois case, therefore, should be adduced.[6]

The recency of the past conviction is of use to the jury on the matter of credibility and has little inherent danger of unfairness.

IT THEREFORE HEREBY IS ORDERED:

1. That the renewed motion of the defendant Bledsoe to suppress the government's use for impeachment of his felony conviction in the United States District Court for the Southern District of Illinois, joined by the defendants Burks and Stafford, and the oral motion of the defendant Cloninger, appearing in Volume 114, page 188, of the transcript, are denied in general, but granted to this extent: In the event either the defendant Bledsoe or the defendant Burks testifies, the government's impeachment evidence as to the prior convictions of the defendants Bledsoe and Burks shall be restricted to the fact that the testifying defendant was convicted on July 28, 1979, of a certain number (whatever it is) of felony counts involving fraud; and

2. That the motion of the defendant Stafford for a severance, appearing in Volume 114, page 194, of the transcript, is denied.

---

**6.** Weinstein's Evidence, § 609[03a], pages 609–80.1 and 80.2, says the government may ask about "the name of the crime, the time and place of conviction, and the punishment." The quotation is assertedly from *Martin v. United States*, 404 F.2d 640, 642–643 (C.A. 10th Cir. 1968), but is not. It apparently is from McCormick, Evidence, § 43 (1954). The only case cited there which permitted inquiry about punishment was *Finch v. State*, 103 Tex.Cr. 212, 280 S.W. 597 (1926). I have found no federal court cases mentioning punishment as an area of inquiry for impeachment.