**UNITED STATES of America, Appellee,**

v.

**Mark Edwin COOK, Appellant.**

**No. 76–3465.**

United States Court of Appeals, Ninth Circuit.

June 29, 1979.

Rehearing and Rehearing En Banc Denied Sept. 12, 1979.

Certiorari Denied Jan. 14, 1980. See 100 S.Ct. 706.

---

Timothy K. Ford, Smith, Kaplan, Withey, Schapira & Ford, Seattle, Wash., Robert T. Czeisler, King, King & Davidson, Kirkland, Wash., for appellant.

J. Ronald Sim, U. S. Atty., Jack A. Meyerson, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before TRASK and GOODWIN, Circuit Judges, and KELLEHER *, District Judge.

GOODWIN, Circuit Judge:

Mark Cook appeals a judgment following his conviction of violating 18 U.S.C. § 2113(a) and (d) (bank robbery) and of related conspiracy and firearm counts.

On January 23, 1976, four men attempted to rob the Tukwila Branch of the Pacific National Bank. Three of the robbers entered the bank while the fourth remained across the street in an automobile. Tukwila police officers, responding to a silent alarm, arrived at the bank while the robbers were still inside. A gun battle erupted between the robbers inside the bank and the officers outside. The fourth robber fired several shots at the police. He then drove away in the automobile.

The three robbers remaining in the bank surrendered and were taken into custody. They were later identified as Edward Meade, John Sherman, and Bruce Seidell. Shortly after his surrender, Seidell died from wounds. Meade stood trial and was convicted. His conviction was affirmed by this court in an unpublished disposition on August 19, 1977. Sherman, who was wounded, and tried separately, is not involved in this appeal.

On March 10, 1976, Officer Johnson of the King County Police was escorting Sher-

---

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

man to Harborview Medical Center for Sherman's weekly medical appointment. As Johnson and the prisoner were entering the police van, a black man in a white coat approached Johnson from the rear and said: "I'm taking your prisoner!" The man then shot Johnson and fled with Sherman. Hospital witnesses later identified Mark Cook as Johnson's assailant. Cook was indicted as the fourth bank robber.

Jack Stockham and Douglas Fluaitte witnessed the gun battle at the Tukwila Bank. Stockham viewed the "get-away" man for two five-second intervals at a distance of some 30 to 40 yards. Fluaitte viewed the same man for "a few seconds" at a distance of 30 to 35 feet and he "got a really fast look" about "a foot away" as the man sped by in his car. A few hours after the attempted robbery, Stockham and Fluaitte gave descriptions of the "get-away man" to the F.B.I. These descriptions in a general way applied to Cook.

About six weeks after the robbery, a Tukwila police officer displayed pictures of six black males, including Cook, to Stockham. Stockham selected three of the photos from among the six but was unable to make a positive identification of the person he saw at the time of the attempted robbery. He indicated that Cook's photograph most closely resembled the man he had seen. Fluaitte was shown the same photos and was unable to make any identification.

On March 15, 1976, a lineup was conducted at the Tacoma police station. Stockham positively identified Cook as the man he had seen at the Tukwila Bank. He also said he recognized Cook as one of the men pictured in the photo spread. Fluaitte also chose Cook from the lineup, but he was uncertain of his identification.

At trial, both witnesses made in-court identifications of Mark Cook as the man they had seen at the bank. They also testified that they had earlier picked Cook out of a lineup. On cross-examination, Fluaitte admitted that he could not be sure, but that Cook strongly resembled the robber he had viewed.

## I. Identification

Cook contends, on appeal, that the use of his picture in the early photo spreads was impermissibly suggestive and that the identifications in the lineup and in court were therefore defective. Although neither witness identified Cook as the robber upon first viewing his photo, Cook argues that the allegedly suggestive photo display carried over to the lineup and ultimately infected the in-court identifications. Cook points out that he was the only one in the lineup whose picture had been previously included in those displayed to the witnesses. However, there is nothing unusual about the lineup being conducted after a photo spread, and nothing *per se* illegal about this lineup.

A mere suggestion that the accused committed the crime does not turn a lineup or a photo spread into a due process violation. *United States v. Higginbotham*, 539 F.2d 17 (9th Cir. 1976); *United States v. Sambrano*, 505 F.2d 284 (9th Cir. 1974). Rather, the suggestion must be so "unnecessary" or "impermissible" as to create a "substantial likelihood of irreparable misidentification" under the "totality of the circumstances". *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In the application of this test, each case must be considered on its own facts. *Simmons v. United States, supra; United States v. Williams*, 436 F.2d 1166 (9th Cir. 1970), *cert. denied*, 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971). Here, we find no basis for concluding that the lineup and the photo spread were conducive to "irreparable misidentification".

Fluaitte did not appear to be influenced by the pretrial identification procedures. He was uncertain of his identification at the lineup, and remained uncertain throughout the trial. The probative value of this identification was slight, but like that of other witnesses, was for the jury to consider. *United States v. Higginbotham,*

*supra; United States v. Valdivia*, 492 F.2d 199 (9th Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974), *cert. dismissed*, 414 U.S. 801, 94 S.Ct. 16, 38 L.Ed.2d 38 (1973).

Stockham, who was unable to make a positive identification from the photo spread, recognized Cook immediately in the lineup. As with all photographic identification procedures, there is a possibility that the prior photo array tainted this later identification. *See Simmons v. United States, supra.* However, in this case, the suggestion, if any, was not so great as to create a substantial likelihood of misidentification.

Stockham was a retired police officer who returned for a second look at the gunman so that he would be able to identify him. Only a few hours after the gun battle Stockham gave a description of the gunman to the F.B.I. It is not disputed that this description reasonably fit Cook. When asked about the lineup, Stockham testified that he recognized Cook when the prisoners walked through the door "to get lined up." Stockham also stated that, although he recognized Cook as one of the men portrayed in the photo spread, his identification was based upon his observations at the bank. *See United States v. Lincoln*, 494 F.2d 833 (9th Cir. 1974).

Based upon the totality of the circumstances, we cannot say that the pretrial identifications in this case were impermissibly suggestive. The photo spread and the lineup did not create a "substantial likelihood of irreparable misidentification". *Simmons v. United States, supra.* The trial court did not err in admitting the testimony of Fluaitte and Stockham.

## II. *Access to Witness*

Cook next argues that he was denied pretrial[1] access to two government witnesses in violation of his Sixth Amendment rights in preparing his defense. These witnesses, Autrey Sturgis and Suzanne LeBray, were enrolled in the Federal Witness Protection Program[1] and were held virtually incommunicado until the trial.

On March 9, 1976, Sturgis, a "friend" of Cook, received a federal grand jury subpoena. Three days later he met with John Henry Browne, an attorney. At the trial Browne testified that Sturgis had told Browne at that meeting that Cook was not involved in the attempt to rob the Tukwila Bank.

On March 16, 1976, Sturgis testified before the grand jury and immediately thereafter enrolled in the Federal Witness Protection Program. His whereabouts were not made known to the defense, and he was not interviewed.

At trial, Sturgis appeared and testified that Cook had told him that he had been involved in the attempted robbery and that at one time Cook had invited Sturgis to participate in it. In support of this testimo-

---

1. The Federal Witness Protection Program is a program designed to protect government witnesses who may be endangered by their testimony. The program is authorized by Title V of Public Law 91–452, which provides in pertinent part:

> "Sec. 501. The Attorney General of the United States is authorized to provide for the security of Government witnesses, potential Government witnesses, and the families of Government witnesses and potential witnesses in legal proceedings against any person alleged to have participated in an organized criminal activity."

> "Sec. 502. The Attorney General of the United States is authorized to rent, purchase, modify, or remodel protected housing facilities and to otherwise offer to provide for the health, safety, and welfare of witnesses and persons intended to be called as Government witnesses, and the families of witnesses and persons intended to be called as Government witnesses in legal proceedings instituted against any person alleged to have participated in an organized criminal activity whenever, *in his judgment*, testimony from, or a willingness to testify by, such a witness would place his life or person, or the life or person of a member of his family or household, in jeopardy. Any person availing himself of an offer by the Attorney General to use such facilities may continue to use such facilities for as long as the Attorney General determines the jeopardy to his life or person continues. * * * " Emphasis supplied. 1970 U.S.Code, Cong. & Admin.News, pp. 1073, 1086, 1087.

Program appropriations are authorized by 28 U.S.C. § 524.

ny, Sturgis recited numerous details about the robbery, details which he claimed to have learned from Cook, but which Cook says Sturgis invented.

Suzanne LeBray was a former roommate of Sturgis. On March 10, 1976, she was taken into protective custody as an informant. On March 11, warrants were issued authorizing Cook's arrest and a search of his apartment. These warrants were issued on the basis of LeBray's statement that Cook had told her about his involvement in the bank robbery. On March 12, LeBray enrolled in the Federal Witness Protection Program and was also harbored by government agents until the trial. She was not made available by the government for a pretrial interview by defense counsel.

Cook's counsel sought access to Sturgis and LeBray to determine if they would be willing to speak with him. The government attorney refused to disclose their whereabouts or to allow access to them.

On April 8, Cook moved to dismiss the indictment, citing, *inter alia*, that the prosecution had interfered with defense attempts to interview government witnesses.

On April 23, the government answered nonresponsively by stating: "No government attorney has at any time specifically forbidden any witness to speak with Cook's counsel." The court did not rule on the motion to dismiss at that time.

On May 5, Cook filed another motion, this time for a court order allowing him to interview Sturgis and LeBray. This motion was never ruled upon.

On May 26, the court entered an order denying the April 8 motion to dismiss the indictment. The court said, concerning the witness-access issue: "The government's response also satisfactorily rebuts any claim that counsel for the defense has been im-

properly prevented from interviewing witnesses." The court, however, did not mention Cook's pending motion of May 5, and Cook's then counsel failed to mention it. The case went to trial without a further effort to interview witnesses.

Cook is understandably disturbed by his counsel's inability or failure to interview Sturgis before trial. The testimony of Sturgis was damaging to his defense, especially in light of the earlier exculpatory statement Sturgis allegedly had made to attorney Browne.

■ As a general rule, a witness belongs neither to the government nor to the defense. Both sides have the right to interview witnesses before trial. *Callahan v. United States,* 371 F.2d 658 (9th Cir. 1967); *United States v. Long,* 449 F.2d 288 (8th Cir. 1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 247 (1972). Exceptions to this rule are justifiable only under the "clearest and most compelling circumstances". *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

■ Where there is no overriding interest in security,[2] the government has no right to interfere with defense access to witnesses. *Gregory v. United States,* 125 U.S.App.D.C. 140, 369 F.2d 185 (1966), cert. denied, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969).

The government's action in this case borders upon intentional misconduct. The representation to the trial court that the government had not interfered with the right of access was disingenuous, at best. It is true that the government did not specifically forbid its witnesses to speak with defense counsel, a practice condemned in *Gregory v. United States, supra.* It is also true that the government did not place its

2. At oral argument, the government asserted that it had valid security reasons for hiding these witnesses, referring to the violent propensities of the perpetrators of these crimes. However, this ground was never presented to the trial court. Rather, the government there denied that it had interfered with defense access to these witnesses. Moreover, we have never held that security considerations pre-

clude all defendant pretrial access to government witnesses. Our cases indicate that security concerns only justify a limitation upon the time and place of access. *See United States v. Murray,* 492 F.2d 178, 194 (9th Cir. 1973) (security considerations justified withholding defense access to government witness until one day prior to trial).

witnesses beyond the reach of a defense subpoena, a practice condemned in *United States v. Mendez-Rodriguez,* 450 F.2d 1 (9th Cir. 1971). However, the government effectively hid two witnesses from defense counsel and, by stalling, frustrated pretrial investigation. The government is not helped by asserting now that the witnesses were harbored under a voluntary program. The nature of the program was never an issue. The Assistant United States Attorney was not candid with the court. It remains to be determined whether this prosecutorial misconduct created reversible error on the part of the court.[3]

Defense counsel had moved the court to dismiss the indictment because of the alleged denial of access to witnesses. That motion was properly denied. Less drastic remedies were available but were not invoked. Defendant included in a general pretrial motion a request for "the right to meet and talk with" two government witnesses. This right, which required no motion for its recognition, was apparently not uppermost in counsel's mind, and, for all the record shows, the motion was abandoned. No effort appears to have been made to take the deposition of Sturgis under Fed.R. Crim.P. 15 and 17, although counsel made a lengthy list of other demands under Rules 16 and 17.

The case is not a capital case, and therefore does not come within the provision of 18 U.S.C. § 3432, which requires the government to furnish a defendant a list of witnesses. If the government had no duty to identify its witnesses in advance of this noncapital trial, it would seem *a fortiori* that it had no constitutional duty to deliver a government witness informally to the defendant for interviews in the absence of a subpoena or court order for the taking of a deposition under proper safeguards. In *United States v. Thompson,* 493 F.2d 305, at 309 (9th Cir. 1974), we pointed out that "the seclusion" of a possible government witness did not require reversal.

A week before the trial, the government released summaries of the expected testimony of all government witnesses. Three days before the trial, Cook received all Jencks Act material (18 U.S.C. § 3500), including the grand jury testimony of Sturgis and LeBray. The government fully complied with the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

During the trial, Cook's counsel could have requested a recess for the purpose of interviewing Sturgis, either before or after his direct testimony. *See United States v. Keine,* 436 F.2d 850, 855 (10th Cir.), *cert. denied,* 402 U.S. 930, 91 S.Ct. 1531, 28 L.Ed.2d 864 (1971). Counsel did not ask for a recess, and he did cross-examine Sturgis at length. *See United States v. Long, supra.*

Defense counsel had an opportunity to interview LeBray after the government decided not to call her as a witness. The problems subsequently encountered by the

---

**3.** The defendant cites no case conferring a constitutional right to pretrial interviews with government witnesses. Time and place restrictions have been approved in certain situations. See note 2, *supra.* In an effort to convert the witness-access issue into constitutional error, the defendant points to his pretrial omnibus discovery motion. It requested:

"1. Order the government to give defendant all discovery clearly required under the wording of Rules 16 and 17 on or before May 7, 1976, and to hold a hearing to determine what other discovery is required from the government.

"2. Order discovery on the grounds already enumerated and on the grounds that the government is estopped from refusing to disclose this information in that it has given

members of television and the newspapers access to the very same requested information.

"3. To grant defendant's counsel the right to meet and talk with Suzanne Weisfield Aikers and Autrey 'Skat' Sturgis, in order to determine if each is willing to talk with defense counsel voluntarily.

"4. Order an investigation by the Civil Rights Division of the Justice Department to determine if any items were seized or photographed by a federal or state law enforcement agency, by means of an illegal breaking and entering into Mark Cook's apartment at 910 E. Minor, Seattle, Washington.

"5. Grant a Motion in Limine excluding all prior convictions which occurred in 1958 and 1967."

defendant when he called LeBray as a defense witness were not related to any lack of a pretrial interview.

■ In light of the whole record, we cannot say that Cook was unfairly handicapped by the lack of pretrial access to Sturgis and LeBray. Accordingly, the cat-and-mouse behavior of the prosecutor, while it reflects no credit upon the government, did not result in reversible error.

### III. *Confrontation*

■ Cook next argues that the trial court denied him the opportunity to challenge the credibility of Sturgis before the jury. The court excluded reference to a 1959 assault conviction with which the defense sought to impeach Sturgis. Cook argues that under Fed.R.Evid. 609 all prior convictions of government witnesses must be admitted for impeachment purposes. Although this argument has some superficial appeal, this circuit has held that the 10-year time limitation of Rule 609(b) applies to government as well as to defense witnesses. *United States v. Carpio,* 547 F.2d 490 (9th Cir. 1976). *See also United States v. Dixon,* 547 F.2d 1079 (9th Cir. 1976). The trial court did not err in excluding evidence of this conviction.

■ Cook also complains that the trial court unduly restricted his cross-examination of Sturgis by excluding evidence of Sturgis' prior drug use. This claim is not well founded. The trial court allowed considerable latitude in the cross-examination of Sturgis. The jury became well aware that Sturgis was a regular user of heroin. Other character defects were explored at length. The court did not abuse its discretion in regulating the scope of cross-examination. *United States v. Marshall,* 526 F.2d 1349 (9th Cir. 1975), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976); *United States v. Carrion,* 463 F.2d 704 (9th Cir. 1972); *United States v. Haili,* 443 F.2d 1295 (9th Cir. 1971).

■ Next, Cook challenges the trial court's refusal to give his requested instruction concerning the special scrutiny the jury should give to the testimony of an addict-informer. The trial court did give a special instruction on informers as well as several general credibility instructions. Cook's sole basis for complaint is that the court failed to give his special "addict" instruction. There was no abuse of discretion.

This circuit has not yet required special "addict" instructions, although other circuits have spoken approvingly of them. *United States v. Wright,* 542 F.2d 975 (7th Cir. 1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977); *United States v. Lee,* 165 U.S.App.2d 50, 506 F.2d 111 (1974), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975); *United States v. Gregorio,* 497 F.2d 1253 (4th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974); *Virgin Islands v. Hendricks,* 476 F.2d 776 (3d Cir. 1973); *United States v. Collins,* 472 F.2d 1017 (5th Cir. 1972), *cert. denied,* 411 U.S. 983, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973); *United States v. Kinnard,* 150 U.S.App.D.C. 386, 465 F.2d 566 (1972); *United States v. Griffin,* 382 F.2d 823 (6th Cir. 1967). However, we conclude that the district court did not err in failing to give the requested instruction in this case. Sturgis's addiction to heroin was disputed, and the issue was peripheral. Sturgis, while admitting that he was a heroin user, specifically denied being an addict. The jury had ample opportunity to evaluate him as a witness. *See United States v. Gregorio, supra.*

■ We have examined the remainder of Cook's contentions involving the rebuttal testimony of Sturgis, and have found no error. Sturgis was an unsavory character, but the jury had the right to believe his testimony.

One issue presented in this appeal remains for decision by the court en banc. Subject to the decision of the court en banc on that segregated issue, the court is of the opinion that the other issues presented to this panel, discussed above, provide no basis for reversal. The judgment of this court and the mandate thereon will be stayed pending the decision of the court en banc, which follows.

Before BROWNING, ELY, HUFSTED-
LER, WRIGHT, TRASK, CHOY, GOOD-
WIN, WALLACE, SNEED, KENNEDY,
ANDERSON, HUG and TANG, Circuit
Judges.

GOODWIN, Circuit Judge (with whom
BROWNING, TRASK, J. BLAINE AN-
DERSON and TANG, Circuit Judges, con-
cur):

Upon a vote of a majority of the judges,
pursuant to Fed.R.App.P. 35(a), the court
en banc has taken the question whether a
defendant, who elected not to testify during
his trial, could preserve on appeal his chal-
lenge to the trial judge's ruling on a motion
for an order excluding evidence of his for-
mer robbery convictions.

The trial court ruled in advance of trial
that if Cook chose to testify the govern-
ment could impeach him with evidence of
any of his prior convictions not time-barred
by Fed.R.Evid. 609(b).[4] Cook elected to re-
main silent, but now asserts that the chill-
ing effect of the court's preliminary ruling
changed the course of his trial and preju-
diced his defense. He says that the court
denied him an important opportunity to
place his own testimony before the jury
and, in so doing, misapplied Rule 609(a).

Two lines of authority have developed in
this circuit on the preliminary question of
appellate review for defendants who elected
not to testify. *Compare United States v.
Murray,* 492 F.2d 178 (9th Cir. 1973), *cert.
denied,* 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d
87 (1974), *with United States v. Brashier,*
548 F.2d 1315 (9th Cir. 1976), *cert. denied,*
429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565
(1977).

In *Murray* and our cases which cite it, we
have said that one who does not testify

cannot complain on appeal about impeach-
ment by prior convictions that might have
been revealed if he had testified. *See, e. g.,
United States v. Fulton,* 549 F.2d 1325, 1327
(9th Cir. 1977). *See also United States v.
Walters,* 477 F.2d 386 (9th Cir.), *cert. de-
nied,* 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d
245 (1973).

From time to time, however, without cit-
ing *Murray* or *Walters,* we have also pro-
ceeded to examine on their merits trial
court rulings requested under Fed.R.Evid.
609. In *United States v. Brashier, supra,*
although the defendants did not testify, we
considered the admissibility of the evidence
of prior convictions and held that they
would have been admissible. Earlier, in
*United States v. Villegas,* 487 F.2d 882 (9th
Cir. 1973), we considered, and rejected, a
pre-Rule 609 motion to exclude evidence of
convictions that had little or no direct bear-
ing upon truth and veracity.

Now that Rule 609 has been in
effect for more than three years, and trial
courts are ruling daily upon motions
brought under that rule to exclude evidence
of prior convictions, we believe it is unreal-
istic to continue to refuse to review these
rulings unless the defendant takes the
stand. The effect of the preliminary ruling
can substantially change the course of the
trial, and any ruling which so changes the
course of a trial ought to be subject to
judicial review.

Defendants and their counsel make many
tactical choices during a trial. Ordinarily,
these choices are binding upon the defend-
ant. However, assuming only for the pur-
pose of argument that the trial court erred
in announcing its application of Rule 609,
the error may cause a defendant to make a
choice[5] that he might otherwise not have

4. Fed.R.Evid. 609 provides in pertinent part:
 "(a) General rule. For the purposes of at-
 tacking the credibility of a witness, evidence
 that he has been convicted of a crime shall be
 admitted if elicited from him or established
 by public record during cross-examination
 but only if the crime (1) was punishable by
 death or imprisonment in excess of one year
 under the law under which he was convicted,
 and the court determines that the probative

value of admitting this evidence outweighs
its prejudicial effect to the defendant, or (2)
involved dishonesty or false statement, re-
gardless of the punishment.
 "(b) Time limit. Evidence of a conviction
under this rule is not admissible if a period of
more than ten years has elapsed * * *."

5. The ruling apparently had that effect in this
case. During pretrial conference, the following

made.[6] The government must admit that the tactical choice to remain silent is more likely a product of the court's ruling than of the defendant's free selection among strategic options.

It pushes the doctrine of waiver beyond its usual criminal-law application to say that a defendant responding to an erroneous ruling by the trial court by remaining silent has waived his right to testify. And waiver becomes even less convincing if we say that by remaining silent under the constraints of an erroneous ruling on a point of law the defendant has waived his right to challenge that ruling on appeal.

It is argued that precedent commands respect, a point hardly to be debated; and it is further argued that respect for precedent requires us to deny appellate review unless the defendant takes the stand and is in fact impeached by the erroneous use of his prior convictions. The difficulty with this argument is that the precedent upon which it depends grew out of the common-law rule that proof of any felony, no matter how remote in time or how tenuously related to truthfulness, could be submitted to the jury for the jury's consideration in passing upon the credibility of every witness, including defendants who elected to testify. The rule that any felony can be used for impeachment had been under attack by the academic community for several years before the courts began to move toward the legislation now codified in Rule 609. *See, e. g., Luck v. United States*, 121 U.S.App.D.C.

151, 348 F.2d 763 (1965), and discussion rejecting the *Luck* rule in the Ninth Circuit in *United States v. Villegas*, 487 F.2d at 883.

While the so-called *Luck* rule was specifically repudiated by Congress (for the District of Columbia) in 1969, and rejected by a majority of the federal and state courts called upon to respond to it, Congress now has settled the question. In 1975, Congress adopted the new Federal Rules of Evidence, including Rule 609. This case does not call upon us to explore the outer limits of rule 609, but it is unlikely that Congress would have enacted such a controversial change in the law of evidence unless it also intended to permit defendants to appeal questions presented by the new rule.

On the narrow question presently before us, the appealability of a preliminary ruling which the defendant says kept him from the stand, pre-Rule 609 precedent really sheds no light. For example, *United States v. Webster*, 522 F.2d 384 (8th Cir. 1975), frequently cited for the proposition that a defendant has no constitutional right to testify without fear of impeachment, is good authority, particularly in the Eighth Circuit, on the constitutional question, but the case says nothing about the appellate remedies of a defendant who claims to have been prejudiced by an erroneous ruling on Fed.R. Evid. 609.

Our own cases are equally obscure in their application to judicial review under the new rule. In *Shorter v. United States*, 412 F.2d 428 (9th Cir.), *cert. denied*, 396

---

exchange took place between Cook's attorney and the district judge:

"MR. CZEISLER: Your Honor, I made several months ago a motion in limine concerning Mr. Cook's prior convictions so I would be able to know ahead of time whether or not I would be putting my client on.

"THE COURT: So you could made a decision as to whether to put him on the stand or not.

"MR. CZEISLER: Yes.

 * * * * * *

"THE COURT: All right, let me consider that, and I will let you know again tomorrow. I will get word to you tomorrow so you will know well in advance and can make your decision as to whether you want to put your client on or not."

**6.** One can never say with certainty that a specific defendant would have taken the stand even if evidence about prior convictions were excluded. Trial lawyers can moot that point to no final answer, but the House Subcommittee notes, and the full Committee thought it safe to say, that more defendants will testify if prior convictions are kept from the jury than if the prior convictions are to be revealed. *See* House Subcommittee on Criminal Justice Notes; Report of the House Committee on the Judiciary; and Additional Views of Hon. Lawrence J. Hogan, quoted in S. Salzburg & K. Redden, Federal Rules of Evidence Manual 336–42 (2d ed. 1977).

U.S. 970, 90 S.Ct. 454, 24 L.Ed.2d 436 (1969), the defendant inquired about the use of his former convictions and when told that they could be used, elected to tell the jury himself, on direct examination, in an attempt to lessen the impact. We held that by telling about his former convictions he waived his opportunity to object to them and thus did not preserve the issue for appeal. 412 F.2d at 431. In *Murray* the defendant decided not to testify after the court refused to rule on the validity of several convictions, on the ground that the motion, which came two and a half weeks into the trial, was too late. In affirming, we agreed with this ground and also, extending *Shorter's* reasoning, found a waiver in the defendant's failure to testify.

In both *Shorter* and *Murray* the trial court never actually ruled on the admissibility of the convictions. In *Shorter* it simply gave an advisory opinion about what its ruling would probably be if the question were presented, while in *Murray* the only adequate request for a ruling came too late to be considered.[7] That is not the situation here, and it is unlikely to be the situation again.

Before the adoption of Fed.R.Evid. 609 it was uncertain whether a trial judge had discretion to exclude evidence of prior convictions on the ground that they were unduly prejudicial. *Shorter v. United States*, 412 F.2d at 430–32. Thus the court's duty to rule and the proper time and manner for counsel to request a ruling were both unclear. The result was that in neither *Shorter* nor *Murray* did this court have an actual ruling which it could review; accordingly, both defendants' claims were necessarily speculative.

The adoption of Rule 609 has changed the situation, for it requires the trial court to weigh the probative value of the impeaching conviction against its prejudice to the defendant,[8] except for a narrow category of recent convictions directly involving dishonesty or false statement.[9] Our holding in *Murray* that a request for a ruling on the validity of prior convictions may be too late if it is made during the trial should encourage counsel to make the motion early in order to obtain pretrial rulings.

A provisional ruling does not necessarily evade appellate review, merely because the party ruled against adjusts his trial strate-

7. This distinction does not explain our cases perfectly. In *United States v. Villegas*, 487 F.2d 882 (9th Cir. 1973), we reviewed a judge's refusal to rule, while in *United States v. Fulton*, 549 F.2d 1325 (9th Cir. 1977), we refused to review a definitive ruling. *Villegas* was decided before *United States v. Murray*, 492 F.2d 178 (9th Cir. 1973), while *Fulton* was decided after the effective date of Fed.R.Evid. 609. Neither considered the new rule's impact on our previous position. In a situation identical to that presented here, the First Circuit has rejected *Fulton* and *Murray*. The court concluded that a defendant who chose not to take the stand in reaction to the trial judge's advance ruling under Rule 609 may challenge the ruling on appeal. *United States v. Hickey*, 596 F.2d 1082 (1st Cir. 1979).

8. Judge Bauer, in an early case dealing with the effect of Rule 609, has provided guidelines to assist district judges confronted with a request for a ruling. *See United States v. Mahone*, 537 F.2d 922, 929 (7th Cir. 1976). After pointing out that the legislative history of Rule 609 places the burden on the government to establish admissibility of prior convictions, Judge Bauer outlines briefly a format for the hearing. The factors which the trial court should con-

sider in exercising judicial discretion antedate Rule 609. Some factors that were mentioned by then Judge Burger as early as 1967 are these:

"(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness' subsequent history.

(3) The similarity between the past crime and the charged crime.

(4) The importance of the defendant's testimony.

(5) The centrality of the credibility issue." *United States v. Mahone*, 537 F.2d at 929, *citing Gordon v. United States*, 127 U.S.App. D.C. 343, 383 F.2d 936, 940 (1967).

9. *See, e. g., United States v. Ortega*, 561 F.2d 803, 806 (9th Cir. 1977). It was held error to impeach with a misdemeanor shoplifting conviction because, for impeachment under Rule 609, a misdemeanor must have been one involving "dishonesty or false statement". While reasonable minds may differ about the honesty of a shoplifter, our court has followed the legislative history of Rule 609 and read "dishonesty" in pari materia with perjury, false swearing, false pretense, and the like.

gy to meet it. The Supreme Court recently reached out, according to the dissenters, to decide on the merits whether a state court had correctly applied a federal constitutional principle in announcing a preliminary ruling, the effect of which was to dissuade a defendant from testifying. *New Jersey v. Portash,* 450 U.S. 440, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979). Because the case turned upon a state's treatment of a constitutional question rather than upon the kind of statutory question we have here, we recognize that *Portash* may not compel the result we reach here; but by analogy *Portash* reinforces our conclusion that Cook did not, by remaining off the stand, forfeit the right to have the point reviewed on appeal.[10]

There is no need in this case to decide when, during the pretrial proceedings or the trial, a motion *in limine* should be made, or when it should be ruled upon. The matter should be left to the discretion of the trial court with a reminder that advance planning helps both parties and the court. Trial by ambush may produce good anecdotes for lawyers to exchange at bar conventions, but tends to be counterproductive in terms of judicial economy. Other courts considering the problem have recommended a provisional ruling in advance of proposed testimony, with the judge free to meet any deception by modifying the ruling. *See, e. g., United States v. Oakes,* 565 F.2d 170 (1st Cir. 1977).

Motions *in limine* have proven their value in litigation. They save jury time, and avoid the waste that sometimes results from haste when side-bar matters have to be urged in the course of the trial. To persist in holding that rulings made in advance of trial are unreviewable unnecessarily discourages the use of such motions. In future cases, the court and counsel confronting Rule 609 problems should turn to Fed.R.Evid. 103 for guidance.

Rule 103 restates the common-law rule that a party seeking reversal upon the basis of an evidentiary ruling must show that a substantial right has been affected. The rule provides for offer of proof, hearing outside the presence of the jury, and the making of a record.

In the case at bar, the appellant did not make an offer of proof, and thus the record on appeal is less than satisfactory. The court, also, might have made a clearer record on the balancing it was required to undertake in its ruling. We have construed the record in this case, however, in favor of appellate review because we realize that the use of Rule 609 was relatively new at the time of trial. Moreover, the rules had not been augmented by extensive procedural discussion in the courts or in the rules themselves.[11]

In future cases, to preserve the issue for review, a defendant must at least, by a statement of his attorney: (1) establish on the record that he will in fact take the stand and testify if his challenged prior convictions are excluded; and (2) sufficiently outline the nature of his testimony so that the trial court, and the reviewing court, can do the necessary balancing contemplated in Rule 609. The trial court can then articulate its reasons for ruling as it does in each case. In future cases, a defendant who does not make the record contemplated in Rule 103 can fairly be said to have abandoned the point, and, accordingly, the teaching of the pre-Rule 609 cases in this circuit still has some value.

---

10. *See also, United States v. Brown,* 501 F.2d 146 (9th Cir. 1974). The trial judge said that an impeachment witness could not testify unless afterwards he turned over copies of documents on which his testimony was to be based to the government. Rather than submit to this condition, defense counsel chose to forego impeachment. This court did not discuss appealability but held that "conditioning impeachment with prosecutorial discovery was prejudicial error." 501 F.2d at 151.

11. A comprehensive treatment of Rule 609, with legislative history and comments based upon local experience under the former law may be found in Judge McGowan's scholarly opinion in *United States v. Smith,* 179 U.S.App. D.C. 162, at 170, 551 F.2d 348, at 356 *et seq.* (1976).

■ On the merits, the trial court stated that, on the facts of this case, the robbery convictions the government intended to use had probative value which outweighed the prejudicial effect of the evidence upon the defendant. On reviewing the record, we cannot say this ruling was an abuse of discretion. *See United States v. Langston,* 576 F.2d 1138 (5th Cir. 1978).

From earlier colloquy about witnesses, the court had reason to believe the defendant would take the stand and palm himself off as a peace-loving member of the American Friends Service Committee with interest in prison reform and social protest. In the context of the entire record, it is not surprising that the court was unwilling to let a man with a substantial criminal history misrepresent himself to the jury, with the government forced to sit silently by, looking at a criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness. *See United States v. Alvarez-Lopez,* 559 F.2d 1155 (9th Cir. 1977).

■ Normally the court should err on the side of excluding a challenged prior conviction, with a warning to the defendant that any misrepresentation of his background on the stand will lead to admission of the conviction for impeachment purposes. *See e. g., United States v. Jackson,* 405 F.Supp. 938 (E.D.N.Y.1975). But in rare cases the court's suspicions may be adequately grounded in the prior course of the trial to permit an advance ruling that the accused's record will shed probative light on the testimony the accused has indicated he will offer. On studying the record, we cannot say that this is not such a case.

■ We do not hold that all crimes of violence against persons and property are always relevant for impeachment so long as they are not time-barred. Indeed, other circuits have held that Rule 609(a) precludes such a rule. *See, e. g., United States v. Smith,* 179 U.S.App.D.C. 162, 551 F.2d 348 (1976). But, on the record of this case, we are satisfied that the trial judge neither abused his discretion nor prejudicially misapplied Rule 609(a) as written.

In *United States v. Dixon,* 547 F.2d 1079 (9th Cir. 1976), we held that it was error to exclude (at the prosecution's behest) evidence of a prior conviction of robbery where the court had mistakenly excluded it on the ground of remoteness in time. Fed. R.Evid. 609(b). We noted that it could have been excluded under Rule 609(a)(1) only if the court made a preliminary finding that the prejudicial effect to the defendant outweighed the probative value of the evidence of conviction. There, the defendant was seeking to use the conviction to impeach a government witness and was in no position to claim prejudice.

A good deal of scholarly debate illuminates the use of prior convictions for impeachment. When the prior conviction involved a crime more of violence than of deception, there must be a balancing of values under Rule 609. Congress apparently intended to allow crimes of violence to retain some impeaching effect in some cases. Otherwise, the reference to the death penalty would be meaningless. *See, e. g., United States v. Oakes, supra.* The rule also goes on to make it clear that convictions of crimes of deception are always provable, regardless of penalty, unless time-barred. Other serious crimes remain in the area of judicial discretion. The majority of this court at this time sees no need to explore all the hypothetical questions that can be propounded under Rule 609.

In conclusion, on the point taken *en banc,* we hold that the categorical rule of *United States v. Murray, supra,* which denies appellate review unless the defendant testifies and is impeached, is no longer the law. Moreover, having reached the merits of the trial judge's preliminary ruling, we find that his balancing of the respective values contemplated in Rule 609 at best was inarticulate, and at worst revealed that he misconceived the purpose of the rule. However, the ruling did not constitute an abuse of discretion, as appropriate reasons could have been given for it. The decision to permit the prior convictions to come in was not, therefore, the kind of error that re-

quires reversal under Fed.R.Evid. 103. The defendant had a fair trial, and no useful purpose would be served by another trial merely to enable the trial court to express its decision in language suggested by the commentators on Rule 609.

None of the asserted errors in this case amounts to a reversible error.

Affirmed.

WALLACE, Circuit Judge, concurring with en banc opinion:

■ I am persuaded that a defendant should be entitled to appellate review of the denial of a Rule 609 motion without testifying. However, my Brother Kennedy raises questions which cause me to add my view of an obviously troublesome area.

■ It is clear to me that the district judge may, within his wide discretion, properly defer ruling on a pretrial Rule 609 motion when, in spite of an offer of proof as to what the defendant would testify, he concludes that ruling is inappropriate at that juncture. But that question is not before us; here the pretrial motion was denied. The issue is: once a district judge has ruled and the defendant has chosen not to testify, is the question reviewable on appeal? Because I conclude that the defendant has not waived his right to challenge the ruling, the issue is resolved to my satisfaction by requiring the complaining party to establish a basis for appellate review—i. e., did the ruling of the district judge actually affect the defendant's decision whether to testify and the determination of guilt by the jury.

■ I join with the majority on my assumption that, in addition to demonstrating that the district judge abused his discretion in ruling as he did, the defendant will also have the burden to prove prejudice. He would thus need to show not only that he would have testified but for the adverse Rule 609 decision and what his testimony would have been, but must also meet the burden of demonstrating that his testimony would more probably than not have altered the jury verdict. *See United States v.* *Valle-Valdez,* 554 F.2d 911, 916 (9th Cir. 1977). This would limit the problem of the defendant's winning the battle although there is only speculation as to what would have occurred had he testified. True, there would be some measure of guesswork on our part and, I would assume, doubts would be resolved in favor of the defendant. But that, I believe, would occur only in the very close case. This approach would provide a workable solution in the vast number of cases where this issue is raised and would afford a fair resolution of two valid positions.

KENNEDY, Circuit Judge (with whom EUGENE A. WRIGHT, SNEED, CHOY and HUG, Circuit Judges, concur), dissenting in part to and concurring in part with en banc opinion:

This court should begin to question whether its attempts to devise new and further refinements for the criminal procedure system serve in any real sense to secure a fair and just trial. I doubt the new procedures concerning rule 609(a)(1) suggested by part IV of the majority opinion will be efficacious; and I fear that the maneuvers required, at least implicitly, by this part of the decision will simply complicate trials without affording real advantages, except to defendants who are looking for ways to manufacture erroneous trial court rulings. I respectfully suggest that both the premises and the conclusions of the court's arguments in part IV of the opinion are incorrect.

The majority's analysis is built on the assumption that defendants will be put to an extremely difficult choice unless they are permitted to appeal a ruling that prior convictions are admissible without taking the stand to testify. In my view the evil the majority seeks to avoid is not as serious as the majority thinks it to be. Moreover, the procedures devised merely replace one choice with another, without significantly increasing the fairness to the defendant.

Turning first to the majority's theory of coercion, analysis shows that any coercive effect will exist only in close cases. If a

prior conviction is inadmissible and its erroneous introduction may have affected the outcome, a defendant found guilty will prevail on appeal, so he has no reason to remain silent in reliance upon an adverse ruling. And if introducing the evidence is error yet harmless, then the defendant should take the stand, for to remain silent in reliance on a harmless ruling is pointless. In either of these events, not being able to appeal an advance ruling without taking the stand does not increase the difficulty of the defendant's decision, and any argument based on coercion is misplaced. If it is objected that in close cases the defendant cannot easily determine admissibility, the answer is that the issue will not be resolved definitively until the final stage on appeal. The uncertainty should be borne by both parties, and it ought not be eliminated from the proceeding merely by the device of an advance ruling by the trial court.

The majority attempts to answer this concern about whether the defendant really felt coerced by requiring a preruling statement from the defendant or his counsel that the defendant intends to testify. However, such statements often will be futile, if not outright charades. Both the Supreme Court and this circuit have recognized that the actual conduct of the trial is a significant, and legitimate, factor in a defendant's election to testify or remain silent. *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); *United States v. Phillips*, 575 F.2d 1265 (9th Cir. 1978). The defendant may wish to evaluate the prosecution case and defense witnesses before making the decision to claim this privilege. Before this opinion, I should have thought a defendant has the absolute right to do so. Moreover, both the prosecution and the defense are free to change their strategy as the trial goes forth. *United States v. Phillips, supra.* At the outset of the trial, a defendant in good faith may intend to testify, but it may be quite reasonable for him to change his mind after considering the course taken by the evidence. All of us know a defendant may tell a brave story to his counsel only to succumb to fear once the full weight of the prosecu-

tion's case becomes apparent. In these instances a defendant and his counsel often elect to invoke the self-incrimination privilege despite an earlier plan to testify. Thus, a defendant cannot be bound by any pretrial statement of election; in fact, it would appear to be unconstitutional to do so. *See Brooks v. Tennessee, supra.* There is absolutely nothing to guarantee the sincerity of such pretrial assurances, and even when statements of election are given in good faith, they may be based on fictional assumptions. Under the court's holding we will be reviewing preliminary rulings made on speculations that bear little relation to what actually occurred at the trial. If we think that the trial court's 609(a)(1) ruling under these artificial conditions is error, we will be reversing in cases when the defendant would not have taken the stand in any event.

Unfortunately, the illogic of the court's reasoning on coercion does not end here. There is no reason why a defendant who makes the choice to remain silent after an advance ruling should be positioned better because of the uncertainties resulting from an undeveloped record than a defendant in a case where the trial court finds it necessary to defer decision until the defendant has given his direct testimony. Yet that result follows from the majority's reasoning.

It is true that the First Circuit, in a recent case reaching the same result as the majority, recognized this anomaly. That court seems to accept it with little hesitation, but the fact that there is precedent does not explain the inconsistency. *United States v. Hickey*, 596 F.2d 1082 (1st Cir. 1979). The First Circuit noted that if the district court had postponed ruling until it had heard the defendant testify, that would have forced the defendant to "take the stand at his peril." Nonetheless, the panel concluded that such a course would have been well within the district court's discretion. If the majority accepts the approach of the First Circuit, then despite its protestations about coercion and putting the defendant to hard choices, it is fully prepared

to force the defendant to "take the stand at his peril."

There is no authority for saying that the defendant has a right to demand this advance ruling or that it is proper for us to require it. Rule 12 of the Federal Rules of Criminal Procedure seems to prohibit that conclusion. Rule 12(b) permits pretrial motions for matters "capable of determination without trial of the general issue." A sensible interpretation of that rule would exclude from its provisions pretrial motions to suppress prior convictions if an informed decision requires hearing the defendant's testimony. Assuming such motions come within rule 12(b) as a general matter, rule 12(e) expressly permits a trial court to defer ruling "for good cause." I should think there is always good cause for deferral if a trial court finds it necessary or appropriate to have the defendant's testimony before ruling on the admissibility of the conviction.

In an attempt to side-step this dilemma, the majority offers the reminder that advance rulings help both parties to plan. I offer the counter balancing reminder that in close cases the trial court may be well advised to defer ruling on motions to exclude prior convictions until after the defendant has testified on direct. That is the time at which the probative value of the conviction can be balanced against its prejudicial effect with the most care and precision. Without the benefit of the defendant's actual testimony, the trial court, and this court in reviewing its ruling, can only speculate on that testimony. I find this a hard exercise, even on the simple speculations made in the case before us. Moreover, it seems to me that the majority's reliance on speculations leads to a further anomaly in its opinion. On the one hand, the majority concludes that erroneous rulings on the admissibility of prior convictions are capable of causing great mischief by coercing the defendant not to testify; yet on the other hand, the majority is perfectly satisfied to have the district court base this important ruling on completely undocumented speculation that the defendant might "palm himself off as a peace-loving member of the American Friends Service Committee."

In my view the majority concludes too easily that this evidence would have been offered for its bearing on veracity and not to show that the defendant was a bad man who likely committed the act. It is a standard assumption that prior convictions are introduced for the noble purpose, not the forbidden one. Myth or not, perhaps there is absolution for this practice since the theory is sanctified by the Rules of Evidence. However, to mandate the trial court's decision on this troublesome question prior to the defendant's testimony means that both the trial court's ruling and our review will be done in the dark much of the time.

In fairness, the majority has recognized the problems of relying on mere speculation, and its solution to the problem is to require the defendant to outline his testimony in advance. Assuming the constitutionality of this new procedure, an issue as to which I have substantial reservations, the device is a poor one indeed. The result is that the defendant will now be presented with a different, but equally difficult, choice to make. The Federal Rules of Criminal Procedure do not permit extensive discovery to reveal the defendant's theory of the case, except for two well defined exceptions requiring notice of an alibi, Fed.R.Crim.P. 12.1 and notice of defense based on mental condition, Fed.R.Crim.P. 12.2. The difficult choice confronting the defendant under the majority view is that if he wishes to exclude a prior conviction, he must be willing to reveal to the judge and the prosecution what his testimony will be before the trial begins.

Aside from the issue of whether this requirement is constitutional and fair to the defendant, the question which troubles me the most is whether the new rule is a sufficient advance over the old practice to justify its added procedural complications. The new procedure does not avoid the difficult choices; it simply presents the defendant with a different decision, perhaps even a more difficult one than he previously had. I do not believe our new rule significantly

advances the fairness or integrity of our criminal process or that we have the authority to adopt it.

*New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), cited for the majority, is hardly an endorsement for the result reached here. Writing for the Court, Mr. Justice Stewart made it clear that the constitutional implications of the pretrial ruling were considered only because the state court system had done so. The Court stated, "federal law does not insist that New Jersey was wrong in not requiring Portash to take the witness stand in order to raise its constitutional claim." *Id.* at 456, 99 S.Ct. at 1295 (footnote omitted). The question in the case before us is not whether the defendant has penetrated within the zone of a permissible case or controversy under article III; the issue is, rather, what are the most sensible requirements for establishing prejudice where evidence of prior convictions is erroneously ruled admissible in a federal trial. In *Portash,* Mr. Justice Powell, concurring, voiced explicit objection to the practice now sanctioned by our court. He stated:

> The preferred method for raising claims such as Portash's would be for the defendant to take the stand and appeal a subsequent conviction, if—following a claim of immunity—the prosecutor were allowed to use immunized testimony for impeachment. Only in this way may the claim be presented to a reviewing court in a concrete factual context. Moreover, requiring that the claim be presented only by those who have taken the stand will prevent defendants with no real intention of testifying from creating artificial constitutional challenges to their convictions.

*Id.* at 462, 99 S.Ct. at 1299 (footnote omitted). In dissenting, Mr. Justice Blackmun found the practice so deficient that it did not present anything but a dispute that was "too remote and speculative to enable this Court to adjudicate it." *Id.* at 463, 99 S.Ct. at 1299.

 In light of these expressions, I am somewhat surprised that our court would permit such a dubious procedure, much less recommend it as a preferred practice for the trial courts of this circuit. I would affirm the conviction but for reasons quite different from those stated in part IV of the majority opinion.

SNEED, Circuit Judge (dissenting in part to and concurring in part with en banc opinion):

 While I concur in the judgment to affirm the appellant's conviction and some of the opinion of the majority, I cannot join that portion of the majority's opinion which overrules *United States v. Murray,* 492 F.2d 178 (9th Cir. 1973). I would continue to deny an appeal on a ruling to admit prior convictions for the purposes of impeachment when such convictions were in fact not admitted because the defendant failed to take the stand. I concur in Judge Kennedy's opinion which sets forth cogent reasons for this position.

I write separately only to add these comments. The majority's procedure for preserving any error for appeal strikes me as cumbersome and unlikely to separate the instances in which the ruling to admit significantly influenced the defendant's decision not to testify from those in which it did not so influence the defendant's decision. Moreover, viewed in retrospect an erroneous ruling to admit will seldom be considered harmless error when the defendant fails to testify.

I realize that these assertions at this stage cannot be overwhelmingly supported. However, neither can they be conclusively disproved. What I believe the majority is doing is creating another device which more often will lead to reversal of otherwise entirely proper convictions than to prevention of injustice. Put differently, what the majority requires may well satisfy our intellectual aspirations for justice but is unlikely otherwise to serve the ends of justice.

Finally, let me add that *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), 39 CCH S.Ct. Bull. pp. B 1436–1460, does not require the overruling of *Murray. Portash* did not hold that it

would be unconstitutional to require that the defendant take the stand to preserve his contention that immunized testimony could not be used for impeachment purposes. Rather the Court held that if New Jersey determined that taking the stand was not necessary to preserve the issue that determination did not prevent the proceeding from being a "case or controversy" cognizable by the Court. The dissenters believed there was no "case or controversy."

Those of us who disagree with Judge Goodwin's opinion as it relates to overruling *Murray* argue that we should not permit the issue regarding priors to be preserved in the absence of the defendant taking the stand. In short, we argue that we should not do as New Jersey did in *Portash*. The Court in *Portash* did not say that New Jersey was required to do as it did by the Fifth and Fourteenth Amendments. Therefore, we remain free to adhere to *Murray.*

HUFSTEDLER, Circuit Judge (with whom ELY, Circuit Judge, concurs), dissenting from *en banc* opinion:

Although I agree with the majority that a defendant does not have to take the stand to preserve for appeal a claim of error in the district court's admission of his prior convictions, I strongly disagree with the majority's decision on the merits of the Rule 609 issues. The district court erred in admitting Cook's prior convictions because they were neither crimes involving "dishonesty or false statement" nor did their probative value outweigh their prejudicial effect. The majority opinion does not directly address the question of Rule 609 error because it blends the two distinct issues of the existence of error with the existence of prejudice. The majority opinion at least

implies that there was no error in the district court's ruling admitting the prior convictions. If that is what the majority intends to say, the remainder of the discussion is dictum. We have no occasion to inquire into the prejudicial effect of a non-error.

I

■ As the majority recognizes, a defendant's failure to take the stand cannot in any sense be deemed a waiver of his right to complain about an erroneous decision to admit his prior convictions. *United States v. Murray* (9th Cir. 1973) 492 F.2d 178, was flatly wrong, and it is correctly overruled. Overruling *Murray* brings us into line with the other Circuits that have directly considered this issue. (*United States v. Hickey* (1st Cir. 1979) 596 F.2d 1082; *United States v. Langston* (5th Cir. 1978) 576 F.2d 1138, 1139; *United States v. Fearwell* (1978) 193 U.S.App.D.C. 386, 392, 595 F.2d 771, 777; *United States v. Smith* (1976), 179 U.S.App. D.C. 162, 171, 551 F.2d 348, 357; *see also United States v. Hayes* (2d Cir. 1977) 553 F.2d 824, 826 (non-waiver assumed without discussion).)

A criminal defendant's right to take the stand or to remain mute is firmly secured by the Constitution. (*Griffin v. California* (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.) Requiring a defendant to forego his constitutional right not to take the stand as the price for preserving error on appeal is thus constitutionally suspect. The waiver theory endorsed by Brothers Sneed and Kennedy would require us unnecessarily to face this constitutional problem.[1]

The waiver concept is inapplicable in this context because no effective waiver of a

---

1. I am somewhat puzzled by the suggestions of Brothers Goodwin and Kennedy that the Supreme Court's recent decision in *New Jersey v. Portash* (1979) 440 U.S. 1292, 99 S.Ct. 1292, 59 L.Ed.2d 501, provides nourishment for their contrary positions in this case. *Portash* provides no help on the question before us because the Supreme Court rested its decision on the fact that the state courts had treated the constitutional questions as properly presented.

Thus, *Portash* does not decide the question whether a defendant may be required to take the stand as a condition for complaining about claimed errors in trial court rulings. The fact that one concurring and one dissenting justice expressed their individual opinions about the consequences of a defendant's failure to take the stand is not controlling because a majority of the Court failed to express agreement with these views.

constitutional right can be implied in absence of proof of intentional and voluntary relinquishment of a known right. (*Brewer v. Williams* (1977) 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424; *Johnson v. Zerbst* (1938) 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461.) Relinquishment of the right to silence is not voluntary when the defendant's choice is influenced by an erroneous ruling of law upon the admissibility of prior convictions. My Brother Kennedy's contrary view is premised upon the assumption that the coercive effect of an erroneous ruling is trivial because "a defendant found guilty will prevail on appeal, so he has no reason to remain silent in reliance upon an adverse ruling." (Kennedy, J., 608 F.2d at 1189.) I disagree. A defendant's goal is to obtain an acquittal.[2] Effective defense counsel will be vigilant in preserving a record for appeal, but he will not do so in a manner that prejudices his client's chances for acquittal. The prejudicial impact of a defendant's prior convictions on his chances for acquittal is evidenced by the prosecution's eagerness to introduce evidence of prior convictions at the time of trial. A defendant will always be more reluctant to exercise his right to take the stand when the prosecution has obtained a ruling permitting evidence of his prior convictions to go before a jury.

My Brother Kennedy argues that our rejecting the waiver doctrine is illogical because a non-testifying defendant can take advantage of an undeveloped record, an opportunity denied a testifying defendant. The assumed discrepancy does not exist. Both the testifying and non-testifying defendants must make a record upon the basis of which an appellate court can determine whether an erroneous Rule 609 ruling was prejudicial. The testifying defendant's record is made while on the stand. The non-testifying defendant must nevertheless make a record to demonstrate prejudice, following procedures discussed *infra*. The dissatisfaction of some of my brethren with the appropriate methods for making a rec-

ord in absence of testimony from the stand does not justify the invocation of the waiver doctrine. What is involved in the Rule 609 situation is an ordinary, non-constitutional evidentiary question: Did the district court err in ruling that Cook's 1967 robbery convictions were admissible against him? If the answer is "no," further discussion of the issue is unnecessary. If the answer is "yes," then the question is whether the erroneous ruling was prejudicial.

II

The majority opinion never directly answers the first question. Instead, the majority opinion blurs the two questions, holding, without explanation, that the district court did not "prejudicially misappl[y] Rule 609(a)" and that "[t]he decision to permit the prior convictions to come in was not, therefore, the kind of error that requires reversal . . . ." (Goodwin, J., 608 F. 2d at 1187–1188.) The majority opinion implies that the district court's ruling on the admissibility of the prior convictions was not erroneous; yet, if that is the holding, the majority has no occasion at all to discuss the question of prejudice or the kind of record that must be made to demonstrate prejudice.

The majority's problem is refusal to accept Congress' decision severely restricting the admissibility of prior convictions under Rule 609. Rule 609(a) of the Federal Rules of Evidence provides:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishones-

---

2. Indeed, the very purpose for a defendant to testify at trial is to try to obtain an acquittal for himself.

ty or false statement, regardless of the punishment."

Cook's prior robbery convictions were not admissible under 609(a)(2). The overwhelming weight of authority is that only such crimes as are technically within the concept of *crimen falsi* are encompassed by Rule 609(a)(2). No matter how "dishonest" burglars, robbers, and thieves may be, those crimes, and a large number of other kinds of crimes that involve elements of dishonesty are excluded from the definition of Rule 609(a)(2). (*United States v. Fearwell, supra*, 193 U.S.App.D.C. at 392, 595 F.2d at 777 (petty larceny); *United States v. Dorsey* (1978) 192 U.S.App.D.C. 313, 591 F.2d 922 (shoplifting); *United States v. Hastings* (8th Cir. 1978) 577 F.2d 38 (narcotics); *United States v. Ashley* (5th Cir. 1978) 569 F.2d 975 (shoplifting); *United States v. Seamster* (10th Cir. 1978) 568 F.2d 188 (burglary); *United States v. Ortega* (9th Cir. 1977) 561 F.2d 803 (shoplifting); *United States v. Hayes* (2d Cir. 1977) 553 F.2d 824 (importing cocaine); *United States v. Smith* (1976) 179 U.S.App.D.C. 162, 551 F.2d 348 (armed robbery and assault); *Virgin Islands v. Testamark* (3rd Cir. 1976) 528 F.2d 742 (petty larceny).)

Cook's prior robbery convictions were inadmissible unless the district court properly applied the balancing test of Rule 609(a)(1) and correctly decided that the probative value of the robberies outweighed their prejudicial effect.

The Government had the burden of showing that the probative value of the prior robbery convictions outweighed the prejudice from their admission. (*United States v. Smith, supra*, 551 F.2d 348, 359–60; *United States v. Oakes* (1st Cir. 1977) 565 F.2d 170, 172 & n.10; *United States v. Hayes, supra*, 553 F.2d 824, 828; *United States v. Mahone* (7th Cir. 1976) 537 F.2d 922, 929; 3 J. Weinstein, Evidence ¶ 609[03] at 609–40, 41, 42 (1975); Cong.Rec. 12254, 12257 (Dec. 18, 1974) (remarks of House conferees).)

The Government's burden is a very difficult one because few prior criminal offenses that do not involve either dishonesty or false statement are likely to be probative of a witness' veracity. (*United States v. Hawley* (2d Cir. 1977) 554 F.2d 50, 52 (difference between 609(a)(1) and 609(a)(2) is based on "the proposition that evidence of prior crimes involving dishonesty or false statement is highly relevant to the trier of fact in the assessment of a witness' credibility, while the same degree of relevance cannot generally be claimed for all other felony convictions.").)

The probative value to be balanced is "the tendency of the prior crimes evidence to persuade the jury that defendant was not a credible person," while the prejudice to be balanced is "the tendency of the prior conviction evidence to persuade the jury that defendant probably committed the crime charged on trial or its tendency to persuade the jury that defendant was simply a 'bad man' and probably deserved to be in jail." (*United States v. Martinez* (5th Cir. 1977) 555 F.2d 1273, 1276.) Among the factors to be considered by courts in assessing the probative value of priors with respect to witness credibility are: the type of crime—where does the crime rank "on the scale of veracity-related crimes?"—(*United States v. Hayes, supra*, 553 F.2d 824, 828 (violence-type crimes do not rate high on this scale)), whether the defendant testified at the previous trial (if the defendant did not testify, the prior conviction has less bearing on veracity, *Id.*), and the age of the conviction (the older the conviction, the less probative it is on the credibility issue, *Id.*). Among the factors to be considered in assessing the prejudicial impact of the priors is their similarity to the crime for which the defendant is being tried (the greater the similarity, the greater the danger of prejudice). (*United States v. Seamster, supra*, 568 F.2d 188; *United States v. Shapiro* (7th Cir. 1977) 565 F.2d 479, 481; *United States v. Hayes, supra*, 553 F.2d 824.)

The district court did not comply with Rule 609(a)(1). The Government argued, apparently successfully before the district court, that Cook's prior convictions were

admissible under Rule 609(a)(2).[3] The Government did not make any showing that the probative value of Cook's prior convictions outweighed their prejudicial effect. In explaining its ruling, the district court said: "if he [Cook] testifies and the evidence of his conviction does not go in, then the jury might well consider him to be a volunteer in service and completely without a criminal record, and the authorities so indicate, that robbery is a crime involving dishonesty, and that if he does testify the jury is entitled to know of this conviction."

The majority opinion concedes that the district court's ruling was "at best . . . inarticulate, and at worst revealed that he misconceived the purpose of the rule [609(a)]." (Goodwin, J., 608 F.2d at 1187–1188.) Nevertheless, the majority opinion concludes that "the ruling did not constitute an abuse of discretion, as appropriate reasons could have been given for it." (*Ibid.*) The invocation of the abuse of discretion concept is inappropriate because the district court did not properly exercise the only discretion given to it under Rule 609(a)(1). As I read the majority opinion, the majority has concluded that even if the prejudicial effect outweighs the probative value of the prior convictions, the prior convictions are nevertheless admissible if the district court believes that a defendant will present himself in a false light before the jury in absence of the admission of the prior convictions. The majority opinion states:

"[f]rom earlier colloquy about witnesses, the court had reason to believe the defendant would take the stand and palm himself off as a peace-loving member of

the American Friends Service Committee with interests in prison reform and social protest. In the context of the entire record, it is not surprising that the court was unwilling to let a man with a substantial criminal history misrepresent himself to the jury, with the government forced to sit silently by, looking at a criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness." (Goodwin, J., 608 F.2d 1187.)

The majority opinion has thus unjustifiably created an exception to the statutory scheme embodied in Rule 609(a). The creation of the exception cannot be accepted. First, there is no record to support the majority's speculations about what Cook would have testified about if he had taken the stand. Second, the majority's argument is no justification for admitting Cook's priors because there are thoroughly acceptable means by which a criminal defendant can be prevented from misrepresenting himself on the stand without ruling in advance that his priors are admissible. Judge Weinstein explained the proper procedure in painstaking detail in *United States v. Jackson* (E.D.N.Y.1975) 405 F.Supp. 938. In *Jackson*, Judge Weinstein expressly conditioned exclusion of a defendant's priors on the condition that he avoid "either through direct testimony or by implication" conveying to the jury "the false notion that he has never been in trouble with the law." Moreover, it has never been doubted that false denials of previous wrongdoing can be contradicted on cross-examination (*United States v. Wolf* (10th

---

**3.** In his brief in support of the motion *in limine*, Cook argued that the priors were not admissible under 609(a)(2) because robbery is not a crime involving dishonesty or false statement. Cook argued that the robbery convictions should be excluded under 609(a)(1) because they were not "probative of credibility" and their similarity to the offense charged made them very prejudicial. (R. 58–60.) On June 11, 1976, the Government filed its response to Cook's motion. The Government's response stated: "The Government submits that defendant Cook's prior conviction for robbery is a crime qualifying as a crime involving dishonesty or false statement under Rule 609(a)(2)." The Government argued that "[u]nlike other types of crime, admissibility under 609(a)(2) does not hinge upon a discretionary balancing by the Court." (R. 107, 108.) Because the Government relied on 609(a)(2) as its grounds for admissibility, the Government made no effort to shoulder its 609(a)(1) burden of demonstrating that the probative value of the priors on the defendant's credibility outweighed their prejudicial effect. Instead, the Government erroneously believed that the priors were automatically admissible under 609(a)(2) because of the nature of the offense.

Cir. 1977) 561 F.2d 1376; *United States v. Alvarez-Lopez* (9th Cir. 1977) 559 F.2d 1155.) Thus, pretrial rulings to admit a defendant's priors cannot be justified on the grounds that the priors must be admitted to contradict false denials of previous wrongdoing that never have been made. If the trial judge had been concerned that Cook would paint himself in a false light on direct examination, he could have made the exclusion of Cook's priors conditional on Cook's not engaging in such misleading testimony.

▮▮▮ The majority opinion expressly recognizes that the conditional exclusion procedure is the proper method for dealing with any concern that a defendant may misrepresent himself while on the stand. (Goodwin, J., 608 F.2d at 1187.) However, the unconditional admission of Cook's priors is upheld because the majority "cannot say that this is not" a rare case where "the court's suspicions may be adequately grounded in the prior course of the trial to permit an advance ruling that the accused's record will shed probative light on the testimony the accused has indicated he will offer." (Goodwin, J., 608 F.2d at 1187.) This reasoning misconceives both the purpose of the conditional exclusion device and the requirements for the unconditional admission of priors under Rule 609(a)(1). A ruling excluding a defendant's priors on the condition that he not misrepresent himself while on the stand is wholly adequate to satisfy any concern over misrepresentation, regardless of what the court's suspicions may be, or how strongly grounded they are in the prior course of the trial. If the court's suspicions prove true and a defendant mis-

represents himself, the priors may then be used to contradict the misrepresentations. A ruling admitting priors in advance of a defendant's testimony can be justified only if the priors reflect on the defendant's veracity even in the absence of any misrepresentations. There was never any explanation by the Government or the district court of how Cook's prior robbery convictions in any way reflected on his veracity as a witness. Rule 609(a)(1) requires such an assessment for the trial court properly to balance the probative value of the priors against their prejudicial effect. While I agree with the majority that Rule 609(a)(1) indicates that Congress "intended to allow crimes of violence to retain some impeaching effect in some cases," it is necessary for the trial court to determine carefully whether the particular crime of violence has such an impeaching effect. The district court here failed entirely to make such a determination.[4]

### III

Once we recognize that the district court erred in ruling Cook's priors admissible, we must consider the question of how a defendant who does not take the stand can demonstrate that he was prejudiced by an erroneous ruling to admit his priors. I agree with the majority that not all erroneous rulings on the admission of prior convictions should be deemed prejudicial. As usual in cases involving non-constitutional error, the appellant is required to show from the record below that the error was prejudicial.

▮▮▮ I agree with the majority that the offer of proof procedure outlined in Rule 103 of the Federal Rules of Evidence is an acceptable method of making a record

---

4. The majority's discussion of *United States v. Dixon* (9th Cir. 1976) 547 F.2d 1079, may be misinterpreted as holding that the burden of proof was on the defendant, rather than the Government, to show that the probative value of priors outweighs their prejudicial effect. The majority explains that in *Dixon* a prior robbery conviction "could have been excluded under Rule 609(a)(1) only if the court made a preliminary finding that the prejudicial effect to the defendant outweighed the probative value of the evidence." (Goodwin, J., 608 F.2d at

1187.) However, *Dixon* involved a situation where the *prosecution* sought to have the prior conviction of one of its witnesses excluded. Since the burden of proof is on the proponent of the admission of the evidence, the burden was not on the prosecution there. Here, the prosecution is the party seeking to use Cook's prior convictions. Thus, the burden is on the Government to demonstrate that the probative value of the priors outweighs their prejudicial impact. The district court missed this point.

to demonstrate prejudice. I do not agree with the majority, however, when they say that "a defendant who does not make the record contemplated in Rule 103 can fairly be said to have abandoned" his right to complain about the district court's ruling. (Goodwin, J., 608 F.2d at 1186.) After discarding the waiver theory of *Murray,* I do not understand why we should revive it under the name of "abandonment." There is no reason why we should single out this particular evidentiary problem and move away from settled principles of prejudice. (*See United States v. Fearwell, supra,* 193 U.S.App.D.C. at 394, 595 F.2d at 779, n.22; *see also United States v. Smith, supra,* 551 F.2d 348.)

I do not share the concerns expressed by Brothers Sneed and Kennedy that the methods of demonstrating prejudice without the defendant's taking the stand will lead to reversals "in cases when the defendant would not have taken the stand in any event." (Kennedy, J., 608 F.2d at 1189.) If the prosecution is convinced that the defendant would not take the stand entirely apart from the admission of priors, then there is no reason for the prosecution to contest Rule 609 motions, particularly in light of the majority's recognition that the trial judge is "free to meet any deception by modifying" 609 rulings. Convictions will only be reversed in cases where the district court made an error of law that prejudices a substantial right of the defendant.

Because the standards for preserving a record of prejudice that we adopt in this case were unavailable at the time of trial, I would remand the case to the district court because the district court erred in ruling that Cook's prior convictions were admissible. (*Cf. United States v. Smith, supra,* 551 F.2d at 357).